**UNITED STATES of America and T. B. Schopfer, Revenue Officer, Internal Revenue Service, Plaintiffs-Appellees,**

v.

**C. H. HARPER, Defendant-Appellant.**

**No. 80–7688.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 23, 1981.

W. J. Jacques, Jr., Greeley, Colo., for defendant-appellant.

Melissa S. Mundell, Asst. U. S. Atty., Savannah, Ga., John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Atty., Carleton D. Powell, Tax Div., Dept. of Jus-

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

tice, Washington, D. C., for plaintiffs-appellees.

Before VANCE, FRANK M. JOHNSON, Jr., and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

The taxpayer appeals from the district court's enforcement of an Internal Revenue Service summons directing him to appear before a revenue officer to testify and to produce certain documents and records relating to his financial status.[1] The taxpayer had been assessed for certain penalties and interest relating to the years 1969 through 1971, and the summons had the legitimate purpose of aiding in determining the collectibility of the liability in question.

The taxpayer asserts that his tax liability for the years in question has been conclusively determined by a proceeding in the bankruptcy court and that the amount as so determined has been paid in full. He argues that because the matters now being investigated are barred by the bankruptcy proceeding the summons has no legitimate purpose. The government points out that the taxpayer's liability for penalties and interest was not before the bankruptcy court. The taxpayer counters that although the penalty and interest claims were not filed in bankruptcy court, principles of res judicata bar the assessment.

This appeal does not turn on these contentions, however, but rather turns on the fact that the validity of an assessment may not be challenged in a summons enforcement proceeding. The burden of the Commissioner in such a proceeding was stated in *United States v. Powell*, 379 U.S. 48, 55, 57, 85 S.Ct. 248, 253, 254, 13 L.Ed.2d 112 (1964):

He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to that purpose, that the information sought is not already within the Commissioner's possession and that the administrative steps required by the Code have been followed....

The district court found that each of these requirements has been met. The burden was then on the taxpayer to show that the investigation was for an improper purpose. *Id.* at 58, 85 S.Ct. at 255; *United States v. Southeast First National Bank of Miami Springs*, 655 F.2d 661, 663 (5th Cir. 1981). We recently observed that this burden "may, for all practical purposes, be insurmountable." *United States v. Price*, 655 F.2d 56, 58 (5th Cir. 1981). In any event it is clear that his desire to contest the underlying assessment will not suffice to meet that burden and defeat the IRS' prima facie showing.

Neither the district court's order nor this opinion should be construed as passing on the merits of the taxpayer's contention with respect to the assessment's validity. His rights to challenge it, including his rights to pay the tax, file claim for refund and bring suit under 26 U.S.C. § 7422[2] remain unimpaired by this proceeding.

Affirmed.

THOMAS A. CLARK, Circuit Judge, dissenting:

I dissent because I have a different view of appellant's contentions and a different view of how the law should be applied in this particular type of tax subpoena enforcement action. The district court erred, in my opinion, in ruling during the hearing that appellant-taxpayer was not entitled to an adversary hearing. Admittedly, the trial court permitted the taxpayer's attorney to make certain proffers of evidence, but the attorney was constantly faced with the court's statement that the taxpayer was not

---

1. The summons was issued pursuant to 26 U.S.C. § 7602. The district court's authorization to enforce the summons is found at 26 U.S.C. §§ 7604(b), 7604(a).

2. The government suggests that the passage of time now bars the taxpayer from filing suit in the tax court under 26 U.S.C. § 6213 without paying the claimed penalty and interest.

entitled to a hearing, and the various proffers did not provide the procedural due process to which the taxpayer was entitled.

The returns involved in this case were for the years 1969, 1970, and 1971. The alleged liability is for penalties for late filing of the returns and for interest on the penalties and interest on the taxes for those years. Assessment for these liabilities has been made. The summons was not issued to aid in a determination of tax liability, but rather for the purpose of determining the collectability of the alleged tax liability. The taxpayer claims, however, that he owes no taxes for the years 1969–71. At the enforcement hearing, he merely wanted to prove that he did not owe the money and that Agent Schopfer was harassing him.

The record indicates that the taxpayer, through the assistance of an accountant, had prepared the tax returns and written checks promptly each year, but the taxpayer's wife, who was supposed to sign each return and mail the check and return to IRS, retained and hid the tax returns and checks. The taxpayer's marital and tax problems resulted in a bankruptcy proceeding. One of the taxpayer's claims in this action is that the bankruptcy court made a final determination of all tax liability for the years 1969–71 and that this amount has been paid in full. The taxpayer also argues that any tax liability for the years in question was discharged in the bankruptcy proceedings. In support of the claim that no taxes are owed for the years 1969–71, the taxpayer included in his reply brief a copy

of a Certificate of Release of Federal Tax Lien, issued on December 15, 1980, which seems to certify that all taxes, together with penalties and interest, for the years 1969, 1970, and 1971 either have been fully satisfied or have become legally unenforceable.[1] In addition to urging that the alleged liability is not owed for the foregoing reasons, the taxpayer claims that he had received no notice that he owed any money to the government prior to the delivery of the summons by the IRS requiring him to appear with his books and records. If this latter contention is true, then the Commissioner failed to comply with the requirement that notice and demand for payment be given to the taxpayer within 60 days after the assessment is made. *See* 26 U.S.C. § 6303(a). Having raised these claims that no tax liability exists, the taxpayer was entitled to a hearing on these issues.

The majority opinion states that this appeal does not turn on the contention that the tax is not owed, "but rather turns on the fact that the validity of an assessment may not be challenged in a summons enforcement proceeding." No authority is cited in support of, nor can I agree with, this broad statement. The majority's analysis fails to distinguish between a summons to determine whether tax liability exists and a summons to determine the collectability of a tax liability that the IRS already has determined to exist. I agree that in the former case the taxpayer cannot raise the

1. This certificate was issued after the hearing which was held on July 31 and August 1, 1980. The certificate was issued by the Atlanta IRS office, was signed by J. H. Gregory, and covers tax periods for the years 1968 through December 31, 1971. The certificate reflects that the dates of assessment for all four years was either May 14 or May 21, 1973. The certificate states:

I hereby certify that as to the following named taxpayer the requirements of Section 6325(a), Internal Revenue Code, have been satisfied with respect to the taxes enumerated below, together with all statutory additions provided by Section 6321; and that the lien for such taxes and statutory additions has thereby been released. The proper officer in the office where notice of internal

revenue tax lien was filed on Oct. 5, 1973, is hereby authorized to make notation on his books to show the release of said lien, insofar as the lien relates to the following taxes. As can be seen, the certificate states that the taxes for these years have been satisfied "together with all statutory additions provided by Section 6321." This includes not only an unpaid tax but "interest, additional amount, addition to tax, or assessable penalty, together with any costs that may acrue in addition thereto." 26 U.S.C. § 6321. The government apparently conceded after the hearing that all of its claims for the years in question had in fact been satisfied. Further, 26 U.S.C. § 6502 prohibits collection of any taxes by levy or court proceeding unless done within six years after the assessment. No levy had been made in this case.

defense that the tax is not owed because that is the question that the IRS is seeking to resolve with the aid of the summons. In the latter case, however, a contention that ,the tax is not owed becomes an issue upon which the determination whether to enforce the summons should turn.

In a summons enforcement proceeding, the taxpayer is entitled to an adversary hearing in which the taxpayer " 'may challenge the summons on *any appropriate ground.'* " *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964) (quoting *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964)) (emphasis added). Surely an "appropriate ground" upon which to challenge a summons to determine the *collectability* of an alleged tax liability is that no such liability exists. "It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer ..., or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. at 58, 85 S.Ct. at 255 (footnote omitted). It seems clear that a summons issued to determine the collectability of a nonexistent tax debt would be issued for an improper purpose and thus should not be enforced by the district court.

The majority opinion concludes that the taxpayer may vindicate his rights by paying the tax, filing a claim for refund, and bringing suit under 26 U.S.C. § 7422. By note 2 the majority explains the government's contention that because of the passage of time the taxpayer could not file suit in the Tax Court under 26 U.S.C. § 6213. However, the right to file suit in the Tax Court or to pay the tax and file for a refund is no remedy for a taxpayer who, when faced with a summons to determine collectability of a tax, merely wants to tell the court that he has paid the tax or that it is not due for some other reason attributable to actions by the government.

The majority relies on *United States v. Powell*, 379 U.S. 55, 85 S.Ct. at 253 (1964), *United States v. Southeast First National Bank of Miami Springs*, 655 F.2d 661 (5th Cir. 1981), and *United States v. Price*, 655 F.2d 56 (5th Cir. 1981), for the proposition that the burden is on the taxpayer to show that the investigation was for an improper purpose. Quoting from *Price*, the majority stated: "We recently observed that this burden 'may, for all practical purposes, be insurmountable.' " All three of these cases involved summonses by which the government was attempting to discover facts that would permit it to determine whether tax liability existed. For example, in *Powell*, the government asserted that the taxpayer had committed fraud with respect to certain filed tax returns in that he had improperly deducted business expenses. The government was subpoenaing a third party to secure records on that subject matter. Similarly, *Southeast First National Bank of Miami Springs* and *Price* involved the government seeking enforcement of third-party subpoenas in its efforts to *determine* tax liability. In the case before us, the liability already has been determined and assessed. The taxpayer asserts that the liability is not owed for several reasons, two of which I have mentioned, but he was denied a hearing on that subject. He was clearly entitled to a hearing and to attempt to carry his burden of proof. That burden was not insurmountable as suggested by the majority.

The IRS presented no formal proof that Dr. Harper owes any taxes or penalties for the years 1969–71, and Dr. Harper claims that he owes no such tax. Yet the majority concludes that a summons to determine the *collectability* of the alleged liability was properly enforced by the district court without any adversary hearing to determine whether any taxes are owed. The district court blindly accepted the IRS' contention [2]

2. Agent Schopfer testified orally that the penalties and interest were owed, but offered no documentary evidence in support of the statement. The government's expected plethora of paper evidence was absent in this case. Agent Schopfer signed the summons (which directed

that taxes are owed and refused to permit Dr. Harper to attempt to prove otherwise. If this procedure in the district court was acceptable, as the majority so holds, then what we have is a rule stating that the IRS can issue a summons against anyone it pleases and have that summons enforced by the district court so long as the IRS claims that it is seeking to determine the collectability of a tax debt *whether that tax debt exists or not.* I fail to see how the issue of the existence of the underlying liability can be said to be irrelevant where the summons is issued to determine *collectability.* I think that both the district court and the majority misperceived the purpose of the hearing and that the taxpayer received short shrift.

Harper to appear before Agent Schopfer in Brunswick, Georgia, on May 2, 1980) and then Schopfer drove a considerable distance from his office in Savannah, Georgia, to appellant's office in Folkston, Georgia, to serve the subpoena, even though the agent assigned to appellant at that time was stationed in Jackson-

ville, Florida, which is but a short distance from Folkston. It is understandable that appellant felt that Schopfer was harassing him.

