Donald Emmet PANTON, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 88–2306–Civ.

United States District Court, S.D. Florida.

Nov. 27, 1991.

William J. Motyczka, Miami, Fla., for petitioner.

Alvarez L. LeCesne, Jr., Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

## ORDER OF SUMMARY JUDGMENT

MARCUS, District Judge.

THIS CAUSE is before the Court on the parties' Cross–Motions for Summary Judgment. At issue in this action challenging seven (7) tax summonses is whether the Petitioner, Donald Panton ("Panton"), can contest the underlying merits of a pending tax investigation, in the instant summons enforcement proceeding. Since we answer this question in the negative, we accordingly grant summary judgment in favor of the Respondent, United States of America (the "Government"), and deny Petitioner's cross-motion for summary judgment.

### I. *Background*

This case involves a challenge to seven (7) Internal Revenue Service ("IRS") summonses directing seven (7) individual Florida financial institutions to turn over financial records pertaining to Panton for tax years 1981–1986, for purposes of an IRS investigation.[1] The IRS investigation here was commenced pursuant to a request by the government of Jamaica, under the terms of the Income Tax Treaty Between Jamaica and the United States, May 21, 1980, U.S.–Jam., T.I.A.S. No. 10206, *reprinted in* 2 Tax Treaties (CCH) P4386. Article 27 of that treaty provides, in part:

2. If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall obtain the information to which the request relates in the same manner and to the same extent as if the tax of the first-mentioned State were the tax of that other State and were being imposed by that other State.

*Id.* at art. 27, P4387. Specifically, the request was in the form of a letter dated November 30, 1987, through Canute R. Miller, Chairman, Revenue Board of Jamaica, seeking information regarding the investigation of Panton's tax liability for the tax years 1981–1986. *See* Aff. of Canute R. Miller, Ex. 4, Resp. Mot. for Summary Judgment.

In 1988, Panton filed the instant petition to quash the IRS summonses. And in 1990, Panton filed a separate action, No. 90–212–Zloch, arising out of the same facts as the instant action, for a permanent injunction against the United States and Jamaica. Panton's petition rests on the grounds that the matters underlying the summonses have already been fully and finally resolved by the Jamaican judicial system; thus, since he alleges that all matters pertaining to his tax liability have been resolved, Panton asserts that the IRS summonses lack a "legitimate purpose." In response, the Government points to case authority holding that the underlying validity of a tax assessment may not be challenged in a summons enforcement proceeding, and that, therefore, Panton's challenge

---

1. The summoned institutions, and the dates of issuance of each respective summons, are: (1) Centrust Savings & Loan (fka Dade Federal Savings & Loan), 11/14/88; (2) Atico Financial (fka Peninsular Federal Savings & Loan), 11/14/88; (3) Credit Bank of Miami, 11/15/88; (4) Ocean Bank, 11/15/88; (5) Florida Federal (fka University Savings & Loan), 11/29/88; (6) Presidential Mortgage Company, 11/10/88; (7) Miami Savings Bank (fka Miami Federal Savings & Loan), 12/1/88. *See* Aff. of Audrey M. Morris, Ex. 1, Resp. Mot. for Summary Judgment.

based on Jamaica's purported resolution of the merits of his tax liability is premature and cannot be raised at this point in the controversy. In reply, Panton observes that neither the IRS or the Jamaican Commissioner of Income Tax has yet made any tax assessment regarding information sought by the summonses, and that the records are at this juncture sought for investigative purposes only; Panton thus claims that the investigatory (as opposed to assessment-related) nature of the summonses here takes this case outside the scope of the authority cited by the Government.

By Order issued on October 4, 1991, we directed the parties to focus on the pending cross-motions for summary judgment. In that Order, we also stayed all discovery pending resolution of the dispositive motions. In addition, we have decided to hold in abeyance any motion to consolidate this action with a parallel action pending before the Honorable William J. Zloch.[2] Finally, Panton has filed a Motion to Strike the Affidavit of Wendell Wilkins, but resolution of that motion is not essential to a determination of this action.[3] Thus, since they may be completely dispositive of the entire action, including the issues raised in No. 90-212, the cross-motions for summary judgment are the matters we now address.

All issues have been fully briefed, and the Court took lengthy argument on these matters at a hearing held in open court on November 14, 1991. The parties have agreed that the cause is susceptible to resolution by way of summary judgment.

II. *Summary Judgment Standard*

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleading, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit recently explained:

In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.] Marsh,* 651 F.2d [983] at 991. [ (5th Cir.1981) ]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics [Techniques, Inc. v. Wackenhut Protective Systems, Inc.,]* 669 F.2d [1026] at 1031 [(5th Cir.1982) ]; *Crowley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond

---

**2.** *Panton v. United States of America and Jamaica,* No. 90–212 (S.D.Fl. filed Jan. 23, 1990). By Orders of April 26, 1990, and May 21, 1990, the cases were consolidated for purposes of discovery.

**3.** Panton had also filed a Motion to Strike Affidavits filed in Support of USA's Motion for Summary Judgment. By Order of November 27, 1991, we denied that motion.

to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh*, 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleading or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.*, 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The United States Supreme Court has recently provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254, 106 S.Ct. at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

In another case, the Supreme Court has declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will *bear* the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added). In the sections to follow, the Plaintiff's and Defendant's claims for Summary Judgment will be evaluated separately against this standard.

### III. *Analysis*

■ At the outset, the parties have agreed on the threshold, and indeed dispositive, issue in this matter: Can Petitioner challenge the underlying facts regarding his tax investigation (and potential assessment) in this tax summons enforcement proceeding? For the reasons which follow, we answer this question in the negative.

■ A former Fifth Circuit (Unit B) decision has squarely addressed this issue.[4] In *United States v. Harper,* 662 F.2d 335 (5th Cir. Unit B, 1981) (per curiam), the Court held that "the validity of an assessment may not be challenged in a summons enforcement proceeding." *Id.* at 336. In reaching this conclusion, the court began by considering a United States Supreme Court decision which held that in summons enforcement proceedings the Government

must show that the investigation will be conducted pursuant to a *legitimate purpose,* that the inquiry may be *relevant* to that purpose, that the information sought is *not already within the Commissioner's possession* and that the *administrative steps required by the Code have been followed ....*

*United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964) (emphasis added). Once the Government makes this prima facie showing,[5]

the burden shifts to the party contesting the summons to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement would constitute an abuse of the court's process.

*La Mura v. United States,* 765 F.2d 974, 979–80 (11th Cir.1985) (citing *United States v. Powell,* 379 U.S. at 58, 85 S.Ct. at 255). *See also United States v. Centennial Builders, Inc.,* 747 F.2d 678, 680 (11th Cir. 1984) (same). The net result is that some minimal inquiry into matters underlying an IRS summons is permitted, but that inquiry will be limited solely to the four *Powell* elements, and may not be used as a forum to challenge the validity of an assessment. *See Harper,* 662 F.2d at 336 (Petitioner's "desire to contest the underlying assessment will not suffice to meet [his] burden and defeat the IRS' prima facie showing."). *See also United States v. Mueller,* 930 F.2d 10, 12 (8th Cir.1991) (per curiam) (taxpayer "could not use the proceedings to

4. The Eleventh Circuit has concluded that "[d]ecisions of the former Fifth Circuit, Unit B, are binding precedent in this circuit." *United States v. Gonzalez,* 940 F.2d 1413, 1420 n. 9 (11th Cir.1991) (citing *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982)).

5. An Agent's affidavit stating that the four *Powell* elements have been met is sufficient to satisfy the government's burden. *United States v. Stuart,* 489 U.S. 353, 360, 109 S.Ct. 1183, 1188, 103 L.Ed.2d 388 (1989); *La Mura v. United States,* 765 F.2d 974, 980 (11th Cir.1985). In this regard, at least one court has provided an example of a sufficient affidavit:

The affidavit states that [the agent] is the competent authority in the United States for administering requests by treaty partners and that he has determined that the Netherlands' request is within the Convention. The affidavit further states

that the requested information may be relevant to a determination of the correct tax liability of [the petitioner] under Netherlands law, that the request was issued in the course of a civil tax investigation by Netherlands tax authorities, and that the same type of information can be obtained by tax authorities under the law of the Netherlands.

*See United States v. Bache Halsey Stuart, Inc.,* 563 F.Supp. 898, 900 n. 2 (S.D.N.Y.1982) (quoting Affidavit of Frederic P. Williams, Acting Director of the Office of International Operations of the IRS, at para. 4). Here, the Government has submitted the affidavit of Donald E. Bergherm, which clearly avers all of the ele-

ments necessary under *Powell* to carry the Government's prima facie burden:

1. I am the Assistant Commissioner (International) of the Internal Revenue Service, Washington, D.C. I have served as the Assistant Commissioner (International) since April 1, 1988. Authority to act as Competent Authority for the purpose of administering Routine and Specific Exchange of Information Programs pursuant to tax treaties, including the Convention between the United States of America and Jamaica, effective December 29, 1981, was delegated to the Assistant Commissioner (International) in Commissioner of Internal Revenue Delegation Order No. 114 (Rev. 8), effective December 24, 1987, a copy of which is attached to this declaration.

4. The Jamaican tax authorities have reason to believe that Mr. Panton had income from sources within and/or assets located within the United States during the involved tax years. Tax information for the involved tax years reported by Mr. Panton to the Jamaican tax authorities failed to reflect such income and/or assets.

5. I am satisfied that the requested information is not within the possession of the Internal Revenue Service or the Jamaican tax authorities; that the requested information as it relates to Mr. Panton may be relevant to a determination of the correct liability of Mr. Panton under Jamaican law; and that the same type of information can be obtained by the tax authorities under Jamaican law.

Aff. of Donald E. Bergherm, Ex. 2, Resp. Mot. for Summary Judgment.

enforce the IRS summons as a forum in which to contest the validity of the underlying tax assessments"). *See generally,* David Bunning, *IRS Third–Party Record Keeper Summonses Issued at the Request of a Treaty Partner: A Practical and Theoretical Approach,* 22 Int'l Law 989 (1988) [hereinafter Bunning].

▮▮▮▮ The "legitimate purpose" element perhaps requires at least some inquiry into the underlying merits. The issue raised, therefore, is whether a limited inquiry into the merits is allowed in order to challenge the Government's stated legitimate purpose. And if so, is the claim, as Panton has made here, that the underlying tax assessment has been fully and completely determined by another sovereign's judicial system, of the sort that may be considered when making that limited inquiry? It seems clear that facial challenges to an agent's affidavit are of course permitted in order to determine whether the *Powell* elements have been fairly averred. And, perhaps most notably, the subject of an IRS summons may be permitted to introduce evidence that the information sought through that summons is to be used solely for the purpose of a domestic criminal prosecution pursuant to a Justice Department referral. *See United States v. Stuart,* 489 U.S. at 361–62 & n. 2, 109 S.Ct. at 1188 & n. 2 (citing 26 U.S.C. § 7602(c) [6]). Similarly, a challenger may under certain circumstances proffer evidence of harassment or coercion, *see La Mura,* 765 F.2d at 980–81

(finding challenger's claim that the IRS attempted to coerce him to settle a collateral matter to be without merit), administrative abuse, *see Hintze v. Internal Revenue Service,* 879 F.2d 121, 127–28 (4th Cir. 1989) (finding that challengers had failed to set forth claim of abuse with requisite factual particularity or depth), or the failure of an agent to follow internal IRS policies or regulations, *see Centennial Builders,* 747 F.2d at 681–82 (finding that IRS regulations were not violated where agent acted in undercover capacity). Significantly, none of these areas require an inquiry into the *merits* of a challenger's underlying tax liability, but instead involve either facial or collateral attacks on the sufficiency of a summons.[7]

Against this backdrop, we conclude that the Government is entitled to summary judgment. Petitioner brought this action to quash summonses issued by the IRS. As the basis for this action, Petitioner's primary contention is that all matters regarding his tax liability, if any, have been fully and finally resolved by the Jamaican judicial system. Petitioner therefore claims that, since there is no legitimate pending tax investigation or assessment in Jamaica, the IRS summonses in question here cannot have been issued for any legitimate or relevant purpose. Specifically, Petitioner asserts that the absence of a pending assessment underlying the summonses is sufficient to take this action outside the scope of *Harper.* We disagree.

---

6. That section provides, in relevant part:
   **(c) No administrative summons when there is Justice Department referral.—**
   **(1) Limitation of Authority.—**No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.
   **(2) Justice Department referral in effect.—**For purposes of this subsection—
   **(A) In general.—**A Justice Department referral is in effect with respect to any person if—
   **(i)** the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or

   **(ii)** any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.
   26 U.S.C. § 7602 (1989).

7. Also of significance in the context of this action is, as one commentator has observed, the lower "proper purpose" threshold required for a summons issued pursuant to a request by a treaty partner, as opposed to a purely domestic summons. *See* Bunning, *supra* p. 9 ("In the case of a summons issued pursuant to the request of a treaty partner, no domestic tax liability or investigation need be involved. The summons is issued for a proper purpose if it is issued pursuant to a request by a treaty partner and is within the ambit of the tax treaty.").

The clear import of *Harper* and its progeny is that a proceeding regarding the validity of a summons is simply not the proper forum in which to raise issues pertaining to whether tax liability exists in the first place. And while, as we have observed above, underlying or collateral facts may sometimes be considered in evaluating the sufficiency of a summons, the court must avoid making determinations as to the tax liability, if any, of the party contesting the summons. Thus, the inquiry into relevance, legitimacy of purpose, or abuse of process must stop short of reaching the merits. In the case at bar, the Government has submitted an agent's affidavit altogether sufficient to satisfy its prima facie burden.[8] Petitioner, in an attempt to meet his responsive burden under *La Mura*, has clearly raised issues that will require the court to render a decision as to his tax liability. We find, however, that to do so at this point would be to answer the very question that the IRS is seeking to resolve by issuing the summonses in the first place. *See Harper*, 662 F.2d at 337–38 (Clark, J., dissenting). Indeed, the precise issue of Petitioner's tax liability, if any, is not properly before the court at this stage in the proceedings. Petitioner can make his arguments on the merits in any subsequent IRS assessment proceeding, or in any equivalent Jamaican proceeding, or in any proper appeals taken therefrom. Indeed, if the matter of his tax liability is *res judicata*, as Petitioner has suggested, we see no reason why that argument cannot be persuasively made in the Jamaican courts at an appropriate time, as the Chairman of the Revenue Board of Jamaica has noted:

> If, as Mr. Panton contends, he had prevailed on all available remedies with respect to his tax liabilities for the years 1981 through 1986, and the Tax Commissioner nonetheless persisted in investigating potential tax liabilities for those years, Mr. Panton could seek [a] Writ of Mandamus in the Courts of Jamaica ordering the Tax Commissioner to cease any further investigation for those years.

Aff. of Canute R. Miller, Ex. 4, Resp. Mot. for Summary Judgment.

■ Further, Petitioner's attempt to distinguish *Harper* is misplaced. The distinction between the investigatory stage and the assessment stage is of no great significance under *Harper*, since it is of no consequence whether the merits underlying an IRS summons are reached by way of a challenge to an investigation or an assessment. As we see it, the only issue to consider pursuant to *Harper* is whether the merits of tax liability will be reached in a proceeding regarding the enforceability of an IRS summons; the precise mechanism which triggers a consideration of those merits is not important. We further observe that even if the mechanism were important, the factual posture here, where the summonses were issued for the purpose of determining if tax liability in fact exists, would still compel the same result under *Harper*. *See Harper*, 662 F.2d at 337–38 (Clark, J., dissenting) (emphasis added):

> The majority's analysis fails to distinguish between a summons to determine whether tax liability exists and a summons to determine the collectability of a tax liability that the IRS already has determined to exist. I agree that in the former case *the taxpayer cannot raise the defense that the tax is not owed because that is the question that the IRS is seeking to resolve with the aid of the summons.* In the latter case, however, a contention that the tax is not owed becomes an issue upon which the determination whether to enforce the summons should turn.

Thus, we hold that Petitioner may not, at this stage in the litigation, challenge the merits underlying issuance of the instant summonses.

But even if we were required to address the underlying merits—and the case law suggests that no merits weighing should take place at this stage—we find that Petitioner still would not prevail. Petitioner points to a series of opinions issued by the Jamaican judicial system which he claims

---

**8.** *See* Aff. of Donald Bergherm, *supra* note 5.

forecloses any further tax assessments against him for the years in question, and asks that we accord "comity" to those opinions. Petitioner asserts that, since the matter of his tax liability is *res judicata* in Jamaican courts, it must be similarly treated by this court as "the law of the case." We disagree with Petitioner's reading of those opinions.

In concluding that the Commissioner of Income Tax had committed numerous procedural errors under the Jamaican Tax Code, the Supreme Court of Judicature of Jamaica noted that:

> Section 75(7) provides:
>
> ... nothing herein contained shall prevent the Commissioner of Inland Revenue from ... making *any assessment or additional assessment for any year of assessment which does not involve reopening any matter which has been determined on appeal for the year.*
>
>     \*     \*     \*     \*     \*     \*
>
> [Here, the Commissioner] *had no new information;* yet, she raised assessments in relation to those years the assessments for which were final and conclusive.

*Regina v. Commissioner of Income Tax, Ex Parte Donald Panton,* Supreme Court of Judicature of Jamaica, No. M68 of 1989, at 11–12 (1990) (quoting sec. 75(7)) (emphasis added). And in a related case, the court quoted the same section of the Jamaican Tax Code, and, in ruling in favor of Panton, noted that *"no new information has been produced." Panton v. Attorney General,* Supreme Court of Judicature of Jamaica, No. E69 of 1989, at 2–3 (1990) (emphasis added). These decisions clearly leave open the prospect of further tax assessment *if* new information regarding Petitioner's income is uncovered. Since that is precisely the purpose for issuance of the summonses here, done pursuant to the express terms of a valid treaty, Petitioner's claim that the matter is res judicata must fail. And of course, even if the matter were fully and completely resolved by the Jamaican judicial system, the Government would still be entitled to summary judgment here in light of our conclusion that the merits underlying the summonses cannot now be reached in these enforcement proceedings. We are thus required to grant the Government's motion for summary judgment, and accordingly dismiss Panton's petition to quash the summonses.

ORDERED AND ADJUDGED that (1) Respondent United States of America's Motion for Summary Judgment to Dismiss Petition to Quash Summons is GRANTED; and (2) Petitioner's Cross–Motion for Summary Judgment is DENIED. All remaining motions regarding discovery, and any pending motions to strike, are DENIED AS MOOT. The Respondent United States is directed to submit to the Court an Order of Final Summary Judgment within ten (10) days of this Order.

DONE AND ORDERED.