Thomas **FABER**, Petitioner,

v.

**UNITED STATES of America,**
Respondent.

No. 1:98cv794.

United States District Court,
W.D. Michigan,
Southern Division.

May 26, 1999.

Thomas Faber Belmont, Belmont, MI, pro se.

Agnes M. Kempker–Cloyd, U.S. Asst. Attorney, U.S. Attorney's Office, Grand Rapids, MI, Thomas P. Cole, U.S. Department of Justice, Washington, DC, for U.S.

## OPINION

HILLMAN, Senior District Judge.

This is a proceeding brought pursuant to 26 U.S.C. § 7609(b)(2)(A) to quash four administrative summonses issued by the Internal Revenue Service. Two of the summonses were issued on October 23, 1998, and two were issued on October 26, 1998. The summonses were directed to Huntington Bank in Parma, OH; the CU Financial Group in Grand Rapids, MI; NBD Bank in Grand Rapids, MI; and Merrill Lynch Pierce Fenner and Smith, Inc. in Grand Rapids, MI. The summonses required production of bank, credit union and investment records pertaining to Thomas and Sharon Faber.

As required by 26 U.S.C. § 7609(a), the IRS gave notice to petitioner Thomas Faber and his wife of the issuance of the summonses on third-party recordkeepers. Thomas Faber filed his petition in this court on November 10, 1998. On February 9, 1999, petitioner filed a purported Notice of Default (docket # 3), which was docketed as a request for entry of default. The notice contended that more than 60 days had passed since service of the motion to quash without response from the government or extensions of time. Petitioner therefore contended that he was entitled to entry of a default.

On February 11, 1999, apparently before receipt of petitioner's Notice of Default,

the United States filed a Motion for Summary Denial of Petitioner's Petition to Quash (docket # 4). The parties each filed response briefs to the other's motions.

## I. DISCUSSION

The matter is now before the court on both petitioner's motion for default and the government's motion for summary denial. The court will address each motion in turn.

### A. Notice of Default

Petitioner asserts that the government's first responsive pleading was filed more that 60 days after service of the petition and therefore he is entitled to entry of a default.

When the notice of default was filed, it was docketed as a motion requesting entry of a default because no summons had been issued and no return of service of summons had been received by the court. Petitioner, in fact, never sought issuance of a summons and never properly served the United States pursuant to Fed.R.Civ.P. 4(i)(1)(A) and (B).

■ Objections to service must be made in the first responsive pleading in order to operate as a device for dismissal. *See* Fed.R.Civ.P. 12(b)(5). The government made no objection to the inadequacy of service in its motion for summary denial. The government, therefore, is not entitled to object to service with respect to any decision on the merits.

■ The need for service of summons, however, nevertheless bars entry of a default based on a finding that the government's response was not timely. As the Supreme Court recently has determined, the date from which time will run under the federal rules begins only upon the receipt of summons. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 119 S.Ct. 1322, 1326, 143 L.Ed.2d 448 (1999) ("Service of process . . . is fundamental to any procedural imposition on a named defendant."). Accordingly, the time for filing a responsive pleading may only be triggered by service of a summons.

Here, summons never issued and was never served. Although the government is subsequently barred from contesting service after the date of its first responsive pleading, the court is not authorized to exercise jurisdiction over the government before the date of that pleading in the absence of a service of summons. The request for entry of default (docket # 3), therefore, is DENIED.

### B. Motion for Summary Denial

Petitioner's petition raises a litany of complaints, many of which are difficult to decipher. Petitioner's principal complaints, however, appear to be five-fold: (1) that the summonses were defective because they had not been modified to contain substitute language as allegedly required under § 3415 of Public Law 105–206; (2) the summonses were issued without prior notice to the taxpayer as required by § 3417 of Public Law 105–206; (3) the summonses, which were made on IRS Form 2039, did not include an Office of Management and Budget ("OMB") number as allegedly required by the Paperwork Reduction Act, 44 U.S.C. § 3512; (4) an administrative summons allegedly is without legal effect on nongovernmental parties, because only a criminal summons, issued following judicial scrutiny, is legally proper; and (5) the government has failed to make a prima facie showing of good faith in issuing the summonses, as required by *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

■ Pursuant to 26 U.S.C. § 7601, the Internal Revenue Service is granted broad authority to "inquire after and concerning all persons . . . who may be liable to pay any internal revenue tax." Part of that authority includes the power to issue administrative summonses to investigate tax liability. *See Donaldson v. United States,* 400 U.S. 517, 523, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). The power to issue summonses is not limited to situations where there exists probable cause to sus-

pect violation of the revenue laws. *Powell,* 379 U.S. at 53–56, 85 S.Ct. 248.

The Internal Revenue Code establishes procedures for issuance and service of summonses upon third-party recordkeepers, including banks, credit unions, and regulated investment companies, such as those at issue in the instant case. *See* 26 U.S.C. § 7609. Under these provisions, whenever a summons is issued upon a third-party recordkeeper, notice of the summons must be given to the taxpayer within three days of service. 26 U.S.C. § 7609(a)(1). Thereafter, the third-party recordkeeper must comply unless the taxpayer files a petition to quash the summons within 20 days after notice of the summons. *See* § 7609(b)(2)(A).

■ The right of taxpayers to challenge summonses under § 7609 is limited. *King v. United States,* 684 F.Supp. 1038 (D.Neb. 1987) (quoting S. Rep. No, 938, 94th Cong.2d sess. 370–71, reprinted in U.S, Code Cong. & Ad. News 2897, 3800 (1976)). The procedural provisions of the section were not intended to disturb the existing common law or to expand substantive rights. *See, id.* at 1041; 4 U.S.Code Cong. & Ad. News at 3800; *Kish,* 1996 WL 196730 at *3. In order to quash a summons, the taxpayer must demonstrate that the summons was issued for an improper purpose, such as to harass the taxpayer, or for "any purpose reflecting on the good faith of the particular investigation." *Powell,* 379 U.S. at 58, 85 S.Ct. 248.

### 1. Pen and Ink Changes to Form 2039

Petitioner contends that the summonses at issue in the present case failed to meet the requirements of § 3415 of Public Law 105–226, *codified in relevant part at* 26 U.S.C. § 7609(c) (1998), which expanded beyond third-party recordkeepers the category of summonses which could be challenged by the taxpayer. Petitioner asserts

that § 3415 requires one issuing a summons, except for a special agent conducting a criminal investigation, to make certain pen and ink changes to Form 2039. According to petitioner, the statute requires the agent to strike out the following words from the section of the summons containing the certificate of notice: "This certificate applies only to summonses served on third-party recordkeepers and not summonses served on other third parties," and substitute for those words: "This certificate does not apply to summonses served on."

■ Section 3415 of Public Law 105–226, however, contains no requirement that anyone make changes to Form 2039. Instead, the statutory section merely expands the ability of taxpayers to challenge all third-party summonses in the same manner as those challenging summonses issued to third-party recordkeepers. Petitioner's reference to the "required" changes is taken not from the statute, but from IRS internal procedures obtained from the IRS website on the internet. *See* Petition Attachment pp. 5–6. The internal procedures allow Form 2039 to reflect the changes in rights under the new law until such time as new forms could be drawn. The internal IRS procedures do not constitute enforceable statutory or regulatory requirements.

Moreover, the four summonses issued in the instant case were served on third-party recordkeepers as defined by § 7609 both *before and after* the new law. While the changes to the form would affect notice with respect other third-party summonses not previously covered by the statute, the internally-required changes had no effect on the applicability of the summons to third-party recordkeepers. Accordingly, the internal procedural requirements, even if enforceable, could not have affected the validity of any summons on such third-party recordkeepers.[1]

---

1. Further, as a factual matter, neither the petition nor the attachments shows that the agent neglected to make the language correction. Petitioner attached copies of the front side of the summonses, which do not contain the referenced language. That language is contained on the reverse side of each summons, which contains the service information

### 2. Notice Required by P.L. 105–206, § 3417

Petitioner next argues that the issuance of the summons was fatally defective following the adoption of § 3417 of the new Public Law 105–206, which imposes three new obligations upon the IRS with respect to investigations. Those obligations include a requirement of reasonable notice to the taxpayer in advance of contact with third parties, advising that such contacts may be made. P.L. 105–206 § 3417(a), *codified at* 26 U.S.C. § 7602(c). By the express terms of § 3417(b), however, the provisions of § 3417(a) did not become effective until 180 days after enactment of the P.L. 105–206. Since P.L. 105–206 was enacted on July 22, 1998, the cited provision did not become effective until January 22, 1999. As a consequence, the summonses at issue here, which were served in October 1998, were not subject to the requirements of the § 3417(a).

### 3. OMB Number on IRS Form 2039

■ Petitioner argues that the summonses are deficient because they were issued on IRS Form 2039, which contains no OMB control number, as allegedly required by the Paperwork Reduction Act of 1980 ("PRA"), 44 U.S.C. § 3512. Courts routinely have recognized the use of Form 2039. *See, e.g., Theuring v. United States,* No. 98–3378, 1999 WL 220135 (6th Cir. 1999) (upholding validity of Form 2039 as form used for issuance of third-party summonses); *Remark v. United States,* 979 F.2d 770, 771 (9th Cir.1992); *Kish v. United States,* No. 1:95:MC:109, 1996 WL 196730 (W.D.Mich.1996). Further, several courts have expressly rejected challenges to Form 2039 based on the theory that the form was invalid because it contained no OMB number. *See United States v. Stoecklin,* 848 F.Supp. 1521, 1526 (M.D.Fl. 1994) (holding that even if the lack of OMB number constituted a statutory violation, noncompliance with the act would not al-

low an individual to ignore a summons); *Hatcher v. United States,* 733 F.Supp. 218, 221 (M.D.Pa.1990) (same); *United States v. Particle Data, Inc.,* 634 F.Supp. 272, 275 (N.D.Ill.1986) (holding that IRS administrative summons was within express exception to PRA as "an administrative action or investigation involving an agency against specific individuals or entities . . . ."; hence no OMB number was required); *Prasch v. United States,* No. CV–F–84–246 REC, 1984 WL 776 (E.D.Cal. 1984). Consistent with these decisions, I conclude that plaintiff's objections to Form 2039 do not constitute a valid basis for quashing the summonses.

### 4. General Validity of Administrative Summonses

Petitioner next raises various assertions challenging the validity of any administrative summons issued under § 7602. Petitioner's assertions are rambling and somewhat difficult to decipher. However, petitioner appears to contend that the IRS had no authority to issue the summonses in this case because of the following reasoning: (1) only criminal summonses (not civil, administrative summons) are valid against nongovernmental parties; (2) a criminal summons could not be issued because the agent signing the summonses had no authority to issue criminal summonses; and (3) therefore the summonses were issued without personal or subject matter jurisdiction. Petitioner's argument relies on the following specific claims: (1) that the only source of authority to issue summons is found at 26 U.S.C. § 7608, which requires issuance by a special agent, who was not involved in the issuance of the instant summonses; (2) that the IRS has no authority to issue a summons in the absence of a due process hearing or a finding of probable cause; (3) that the IRS is attempting to tax his labor, a proposition he asserts is

---

regarding the summons. Exhibit A to the government's motion contains a copy of side two of the summons issued to Merrill Lynch, which shows that the required changes were

made. Petitioner, by not including any factual indication of the alleged failure, fails to meet his burden of establishing a defect.

illegal under the antitrust statute governing the legality of union organizations, 15 U.S.C. § 17; and (4) that the regulations implementing 26 U.S.C. §§ 7601–7610 are "promulgated by the Secretary relating to Alcohol, Tobacco and Firearms, activities in which the Petitioner is not engaged," and are therefore inapplicable to petitioner.

None of petitioner's broad objections to the authority to issue administrative summonses is meritorious. First, issuance of administrative summonses is authorized by 26 U.S.C. § 7602, not § 7608, and the authority of the IRS under § 7602 repeatedly has been upheld. *See, e.g., Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112; *Donaldson*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580.

Second, the Supreme Court definitively has held that the statutory investigative authority given officers of the Treasury Department is not limited to situations in which there exists probable cause to believe that a violation of the tax laws has occurred. *U.S. v. Bisceglia*, 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); *Powell*, 379 U.S. at 51, 85 S.Ct. 248 ("[T]he Government need make no showing of probable cause to suspect fraud" in order to obtain enforcement of administrative summonses). Moreover, the courts have rejected taxpayer claims that their due process liberty and property interests were violated by enforcement of administrative summonses issued by the IRS. *See United States v. Gilleran*, 992 F.2d 232 (9th Cir.1993).

■ Third, petitioner's reliance upon 15 U.S.C. § 17 is unfounded. The statute, containing the words, " [T]he labor of a human being is not a commodity or article of commerce...," serves within the context of the federal antitrust laws and the rest of the cited provision to exclude labor organizations from language defining illegal combinations and conspiracies to restrain trade. *Id.* The language in no way limits the ability of the government to impose taxes on earnings, as petitioner appears to imply. In any event, petitioner

is not entitled to quash the summonses by raising defenses to his ultimate tax liabilities. *See United States v. Mueller*, 930 F.2d 10 (8th Cir.1991) (taxpayer may not use proceeding to enforce IRS summons as forum in which to contest the validity of underlying assessments; validity of assessments is not relevant to whether summons should be enforced); *United States v. Harper*, 662 F.2d 335, 336 (5th Cir.1981) (per curiam) (taxpayer challenge to underlying assessment does not suffice to meet his burden to show improper purpose in issuance of summons).

Finally, petitioner's assertion that the regulations do not apply to him because they are lodged under the authority of the Bureau of Alcohol, Tobacco and Firearms of the Department of the Treasury is patently frivolous. *See* 27 C.F.R. Part 70. The name of the division assigned responsibility for various duties under the regulations does not limit the substantive authority granted by the authorizing statute.

I conclude that petitioner has failed to state a legitimate basis for challenging IRS authority to issue administrative summonses under § 7602.

## 5. Summons fails to make a prima facie showing of legitimate purpose

Petitioner's final basis for quashing the summons is a declaration that the IRS has failed to make a prima facie showing of legitimate purpose under the standard established in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). In moving for summary denial of the petition to quash, the government contends that it need not make out a prima facie showing of good faith under *Powell*, but need only do so if it seeks to enforce the summonses. The government contends that a motion for summary denial, like a motion to dismiss for failure to state a claim, requires no *Powell* showing by the government.

The Sixth Circuit has held that the decision on a petition to quash an administra-

tive summons is governed by the same standard set in *Powell* for supporting a petition to enforce an administrative summons:

> The decision to grant a petition to quash is guided by the analytical framework posited by the Supreme Court in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Under *Powell*, the government bears the initial burden of establishing a prima facie case of "good faith" by showing that the summonses: (1) were issued for a legitimate purpose; (2) seek material relevant to that purpose; (3) seek material that is not already in the government's possession; and (4) satisfy all administrative steps required by the United States Code.

*Kondik v. United States*, 81 F.3d 655, 655–56 (6th Cir.1996). *See also Theuring*, 1999 WL 220135 at *1 (noting that *Kondik* applied the same standard to petitions to quash as petitions to enforce); *Rich v. Cripe*, No. 97–6405, 1998 WL 894835 at *1 (6th Cir.1998) ("In a proceeding to quash or enforce a summons issued by the IRS, the government must make a prima facie showing that the summons was issued for a legitimate purpose ....") In other words, the Sixth Circuit has directly held that the government at all times retains the obligation to make a prima facie showing of good faith in issuing a summons.

The government, however, relies upon various district court cases which state that a petition to quash, like a complaint, may fail to state a claim where the petition raises no legitimate, legally sufficient basis for challenging the summons. *See Hogan v. United States*, 873 F.Supp. 80, 82 (S.D.Ohio 1994) (in filing a motion to quash, petitioner bears the burden of presenting specific facts from which the court "could infer a possibility of wrongful conduct by the government"; in the absence of such allegations, "a petition to quash, like a complaint, may simply fail to state a claim upon which relief can be granted and the action should then be dismissed."); *Deleeuw v. Internal Revenue Service*, 681 F.Supp. 402, 404 (E.D.Mich.1987); *Godwin*

*v. United States*, 564 F.Supp. 1209, 1215 (D.Del.1983) (party opposing an IRS summons "must come forward with specific facts, under oath, from his own resources, demonstrating that a triable issue exists on a legally sufficient defense in order to justify an evidentiary hearing."). I note that *Hogan* and *Deleeuw*, both district court decisions from the Sixth Circuit, were decided before *Kondik* and, to the extent they are inconsistent with *Kondik*, have been overruled. I am not persuaded, however, that the cases are in conflict.

Where a petitioner has raised in his petition only claims that do not constitute legally sufficient challenges to the summonses, summary dismissal may be appropriate for failure to state a claim. Here, petitioner's previously-discussed challenges to the summonses are of such nature. However, petitioner's last objection to the summonses is a direct challenge to the good faith of the IRS in issuing the summonses. By the language of his challenge, petitioner has raised the claim that the government has failed to make prima facie showing of good faith under the *Powell* standard. *See* Petition, Part Four, Numbered Section 8.

 This court recognizes its obligation to insure that the administrative summons process is not used "for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute ...." *Powell*, 379 U.S. at 58. The burden on the government to make a prima facie showing of good faith is not great. The requisite showing is generally made by the submission of an affidavit from the agent who issued the summonses. *Kondik*, 81 F.3d at 656; *United States v. Will*, 671 F.2d 963, 966 (6th Cir.1982). Once a prima facie case has been shown, the burden, which is a heavy one, shifts to the taxpayer to prove that the enforcement of the summonses would be an abuse of the court's process. *Id.*

Here, petitioner admittedly has made no specific allegations of bad faith or improper purpose in his petition. Nevertheless, petitioner has demanded a prima facie showing of legitimate purpose. Where such a demand has been made, especially in light of petitioner's pro se status, I decline to assume good faith in the absence of the *Powell* showing required by the Sixth Circuit in *Kondik.*

Accordingly, petitioner is entitled to a prima facie showing of good faith on the final claim under the petition to quash. I therefore decline to summarily deny the petition on the issue of the government's good faith in issuing the summons.

## II. *CONCLUSION*

For the foregoing reasons, petitioner's request for entry of default (docket # 3) is **DENIED.** In addition, the government's motion to summarily deny the petition (docket # 4) is **GRANTED IN PART AND DENIED IN PART.** The government's motion with respect to petitioner's objections contained at Part Four, numbered sections 1 through 7 of the petition is **GRANTED,** and those portions of the petition are dismissed. The government's motion with respect to petitioner's challenge contained at Part Four, numbered section 8 of the petition is **DENIED.**

### *ORDER*

In accordance with the opinion filed this date,

**IT IS ORDERED** that petitioner's request for entry of default (docket # 3) is **DENIED.**

**IT IS FURTHER ORDERED** that the government's motion to summarily deny the petition (docket # 4) is **GRANTED IN PART AND DENIED IN PART.** The motion is **DENIED** as to the allegations set forth in Part Four, numbered section 8, of the petition, and those portions of the petition remain pending. The motion is **GRANTED** as to the portions of the petition set forth at Part Four, numbered

sections 1 through 7, and those portions of the petition are **DISMISSED.**