**Wayne R. LA MURA, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Nos. 83–5678, 83–5722.**

United States Court of Appeals, Eleventh Circuit.

June 25, 1985.

Glenn L. Archer, Michael L. Paup, Chief Appellate Section, Charles E. Brookhart, Jr., Libero Marinelli, Jr., Asst. Attys. Gen., Patricia Willing, Atty., Dept. of Justice Tax Div., Washington, D.C., for defendant-appellant.

Michael S. Feinman, Sunrise, Fla., for plaintiff-appellee.

Before TJOFLAT and FAY, Circuit Judges, and ALLGOOD *, District Judge.

TJOFLAT, Circuit Judge:

The United States appeals two district court orders granting a taxpayer's petitions to quash Internal Revenue Service (IRS) summonses. The district court gave the taxpayer such relief because it concluded that the summonses were issued for an

---

improper purpose and were overbroad. We reverse.

## I.

In the spring of 1983, Special Agent Bradford C. Vale of the Criminal Investigation Division of the Internal Revenue Service was assigned to investigate the income tax returns of Wayne R. La Mura for the years 1980 and 1981, as part of an investigation focused on uncovering bogus charitable contributions by tax protesters. On April 4, 1983, Agent Vale notified La Mura by letter that he was investigating La Mura to determine whether he had committed possible criminal violations of the Internal Revenue Code with respect to those tax years. "Specifically," Vale wrote, "the Internal Revenue Service (Criminal Investigation Division) is questioning certain charitable contributions you claimed as deductions on your income tax returns for the years" 1980 and 1981. La Mura, an airline pilot with a gross income of approximately $100,000 per annum, had taken deductions of $22,000 in 1980 and $28,500 in 1981 for contributions he allegedly made to the Universal Life Church.

On the same day Agent Vale notified La Mura of the investigation he issued summonses to the Landmark Bank and the Southern Bell Telephone Company, both located in Fort Lauderdale, Florida. The summons to the bank requested the records of any checking, savings, security or loan accounts La Mura and his wife maintained at the bank and any other business they transacted there from January 1, 1977 through February 1, 1983. The summons to the telephone company requested all records relating to telephone service provided the La Muras from January 1, 1979 through December 1, 1982. Agent Vale notified Mr. La Mura of the issuance of the summonses, in accordance with 26 U.S.C.A. § 7609(a) (West Supp.1985).[1]  In

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, siting by designation.

**1.** Section 7609(a) provides that if a summons is served on a "third-party recordkeeper," such as

a bank, see 26 U.S.C.A. § 7609(a)(3)(A) (West Supp.1985), then the IRS must give notice of such service to the person whose records are required to be produced by that summons and shall inform that person of the procedure by which he can move to have the summons

response, La Mura petitioned the district court to quash the summons, as provided for in 26 U.S.C.A. § 7609(b)(2) (West Supp. 1985),[2] and presented his own affidavit in support of his petition.

In his petition, La Mura stated that the summonses should be quashed because they had been issued for an improper purpose, to coerce him to settle a "collateral matter,"[3] and because the summonses were overreaching in that they sought information "not in any way relevant to the taxable years under investigation ... or to the subject of the investigation," his contributions to the Universal Life Church. In his affidavit, La Mura stated that he was a minister of the Universal Life Church, that he was aware that other members of that church were being investigated for criminal violations of the income tax laws, and that, as a result, he was "fearful of claiming further charitable contributions" to the Universal Life Church.

The court heard argument on La Mura's petition to quash on May 27, 1983. The discussion at the hearing was limited to whether the summoned records were relevant to the IRS' investigation. La Mura argued that the records contained no information that would shed any light on the genuineness of the challenged contributions and that he could produce cancelled checks verifying that these contributions had in fact been made. The court then called upon the government to establish the relevance of the summoned records.

The government stated that the telephone records were necessary to locate persons who might have knowledge of the nature of La Mura's involvement in the Universal Life Church. The bank records would enable it to analyze the La Muras' life style before, during, and after the years in which the contributions were made. If their life style did not change as a result of the contributions, which amounted to nearly one-third of La Mura's annual income, then doubt would be cast, the government argued, on the bona fides of the contributions. The government also reminded the court that the IRS had the right to investigate all aspects of Mr. La Mura's tax liability for the years 1980 and 1981, and thus the court's ruling on relevance should not turn solely on whether the summonses were relevant to the charitable contributions.

The district court's primary concern appears to have been with the government's request for bank records for years not under investigation. Even after the government explained its reason for needing these records, the court again asked the government how "records concerning a return that has not yet been filed" and "records dating back to 1977" had anything to do with an investigation of the taxpayer's liability for the years 1980 and 1981. The government repeated its representation that such records were necessary to analyze the taxpayer's life style during the relevant period. If the La Muras' life style were such that it consumed most of the taxpayer's income, and that life style remained unchanged from 1977 through 1982, it could be inferred, the government contended, (1) that La Mura had not made the contributions from savings accumulated during the earlier years and (2) that La

quashed. *See* 26 U.S.C.A. § 7609(b)(2) (West Supp.1985).

**2.** Prior to the amendment of § 7609 in 1982, a taxpayer could stay a third-party recordkeeper's compliance with an IRS summons by simply notifying the recordkeeper in writing that he did not wish the recordkeeper to comply. The IRS was then required to seek enforcement of its summons in the district court. Congress decided to shift the burden of commencing litigation to the taxpayer because the automatic stay provision was so easy for the taxpayer to invoke that taxpayers would stay the enforce-

ment without first considering the merits of their objection. As a result, the IRS prevailed on most actions, many of which went uncontested. S.Rep. No. 494, 97th Cong., 2d Sess. 281–83, *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 1027–29. These procedural changes were not intended to have any affect on the substantive laws applicable to IRS summonses. *Id.* at 283, *reprinted in* 1982 U.S.Code Cong. & Ad. News 781, 1029.

**3.** The record is silent as to what this collateral matter was.

Mura had not made them from the proceeds of loans taken out in 1980 and 1981 and paid back later. The fact that La Mura could produce cancelled checks payable to the Universal Life Church, the government concluded, should not preclude the IRS from examining the records of the La Muras' banking transactions.

The district court was not convinced by the government's argument and announced that it would quash the summonses in their entirety on the ground that they were "overbroad and overreaching"; the court directed La Mura to prepare an order to that effect. On June 3, 1983, the court signed the order La Mura presented, quashing the summonses because they were too broad in scope *and* because they had been issued for improper purposes.

On June 1, 1983, just prior to the entry of this order, the government moved to supplement the record with the affidavit of Agent Vale. In his affidavit, Vale stated that the summoned records were necessary to ascertain the correct tax liability of the taxpayer for the years 1980 and 1981, that they were relevant to that investigation, that the IRS did not have the information the records would disclose, and that all administrative procedures required of the IRS to be performed before issuing the summonses had been followed. Vale added, with respect to the relevancy issue, that the requested bank records were "necessary to show that the taxpayer's life style and pattern of living expenses remained effectively unchanged before, during and after the time he made certain charitable contributions in the years under investigation." The court granted the government's motion to supplement the record *nunc pro tunc* on June 9. On June 22, the government, renewing its previous arguments in support of the summonses, moved the court to reconsider its order quashing the

summonses. The court denied this motion on August 1.

Shortly after the district court entered its June 3 order quashing the summonses to the Landmark Bank and the Southern Bell Telephone Company, the IRS issued summonses to eight other financial institutions, requesting the same information it had of the Landmark Bank. La Mura petitioned the court to quash these summonses on the ground that the district court's June 3 order "collaterally estopped" the IRS from issuing them. The government responded by moving the court to dismiss his petition to quash for failure to state a claim for relief. Fed.R.Civ.P. 12(b)(6). The government argued that the court should not apply the June 3 order to the eight summonses because that order was based on a faulty premise—that the IRS' investigation of the taxpayer's tax liability was limited to his charitable contributions, as opposed to his overall tax liability, for the years 1980 and 1981—and because the doctrine of collateral estoppel is inapplicable in summons enforcement cases. According to the government, petitions to quash summonses must be disposed of on a case-by-case basis.

■ Following a hearing on September 3, the court concluded that it was bound by the decision regarding the Landmark Bank and Southern Bell Telephone Company summonses and granted La Mura's petition to quash. The government now appeals the district courts' June 3 and September 3 orders, seeking review of the summonses issued to the Landmark Bank and the eight other financial institutions.[4] We have consolidated these appeals [5] and, because the issues they present are identical, we treat them as one.

## II.

■ Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602 (1982), provides

---

4. The government has abandoned its attempt to enforce the summons to Southern Bell Telephone Company.

5. An order of the district court granting or denying a petition to quash an agency summons is a final order, appealable under 28 U.S.C. § 1291

(1982). *F.T.C. v. Texaco*, 555 F.2d 862, 873 n. 21 (D.C.Cir.), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977); *International Brotherhood of Electrical Workers v. E.E.O.C.*, 398 F.2d 248, 251 (3d Cir.1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969).

that the Secretary of the Treasury, or the IRS as his designee,[6] may "examine any books, papers, records, or other data which may be relevant or material to ..." ascertaining the correctness of any return and may issue summonses to those in "possession, custody, or care" thereof to appear and produce them to the IRS.[7] The IRS' power to investigate under section 7602 has been described as "broad" and "expansive." *United States v. Arthur Young & Co.*, —— U.S. ——, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984); *United States v. Euge*, 444 U.S. 707, 715 n. 9, 100 S.Ct. 874, 880 n. 9, 63 L.Ed.2d 141 (1980); *United States v. Gottlieb*, 712 F.2d 1363 (11th Cir.1983). The courts have been hesitant to curtail the IRS' investigative power. As the Supreme Court explained in *United States v. Bisceglia*, 420 U.S. 141, 145–46, 95 S.Ct. 915, 918–19, 43 L.Ed.2d 88 (1975),

> the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability. Nonetheless, it would be naive to ignore the reality that some persons attempt to outwit the system, and tax evaders are not readily identifiable. Thus, § 7601 gives the Internal Revenue Service a broad mandate to investigate and audit "persons who *may be* liable" for taxes and § 7602 provides the power to "examine any books, papers, records, or other data which may be relevant ... [and to summon] any person having possession ... of books of account ... relevant or material to such inquiry...." The purpose of the statutes is not to accuse, but to inquire. Although such investigations unquestionably involve some invasion of privacy,

they are essential to our self-reporting system, and the alternatives could well involve far less agreeable invasions of house, business, and records.

(Emphasis in original.) *See also United States v. Wyatt*, 637 F.2d 293, 299 (5th Cir.1981) (IRS' powers of investigation should be liberally construed because all the facts are in the taxpayer's hands);[8] *United States v. Schwartz*, 469 F.2d 977 (5th Cir.1972) (IRS' powers of investigation likened to that of grand jury).

The IRS' investigative power is not, however, limitless. To obtain enforcement of a summons, the IRS must demonstrate (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS' possession and, (4) that it has taken the administrative steps necessary to the issuance of a summons. *United States v. Powell*, 379 U.S. 48, 57–59, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 680 (11th Cir.1984); *Matter of Newton*, 718 F.2d 1015, 1019 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984). The IRS can satisfy this burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts. *Matter of Newton*, 718 F.2d at 1019; *United States v. Davis*, 636 F.2d 1028, 1034 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981). *But see United States v. Goldman*, 637 F.2d 664 (9th Cir.1980). Thereafter, the burden shifts to the party contesting the summons to disprove one of the four elements of the

---

**6.** Responsibility for the administration and enforcement of the revenue laws is vested in the Secretary of the Treasury. 26 U.S.C. § 7801(a) (1982). The IRS, however, is organized to carry out these responsibilities for the Secretary. *Donaldson v. United States*, 400 U.S. 517, 534, 91 S.Ct. 534, 544, 27 L.Ed.2d 580 (1971).

**7.** 26 U.S.C. § 7609(i) (1982) provides that a third-party recordkeeper, such as the financial institutions served with summonses here, must assemble records and be prepared to produce them to the IRS on the day on which the records are to be examined. The IRS may issue

a certificate to the third-party recordkeeper that the period prescribed for beginning a proceeding to quash a summons has expired. If the recordkeeper relies in good faith on this certificate, it can not be held liable for disclosing its customers' records to the IRS. *Id.*

**8.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process. *Powell*, 379 U.S. at 58; 85 S.Ct. at 255. *Matter of Newton*, 718 F.2d at 1018; *United States v. Davis*, 636 F.2d at 1034. The only *Powell* elements disputed here are whether the IRS' investigation was conducted pursuant to a legitimate purpose [9] and whether the information sought from the La Muras' bank records for the years 1977 through 1983 was relevant to that investigation.

▮▮▮ It is clear that the government met the four-pronged burden of proof prescribed by *United States v. Powell.* Agent Vale's affidavit established that the summoned records were necessary to ascertain the correct tax liability of the taxpayer for the years 1980 and 1981, that they were relevant to that investigation, that the IRS did not have the information the records would disclose, and that all administrative procedures required of the IRS had been followed. Even without Vale's explanation of relevancy, that the Landmark Bank records were necessary "to show that the taxpayer's life style and pattern of living expenses remained effectively unchanged before, during and after the time he made certain charitable contributions in the years under investigation," his affidavit was clearly sufficient to establish a prima facie case for summons enforcement. *See United States v. Southeast First National*

*Bank of Miami Springs*, 655 F.2d 661, 664 (5th Cir.1981); *see also United States v. Will*, 671 F.2d 963, 965, 967 (6th Cir.1982); *United States v. Kis*, 658 F.2d 526, 536 & n. 28 (7th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). To prevent such enforcement, La Mura had to show that the summonses had been issued for an improper purpose or that the information they sought was not relevant to the IRS' investigation.

### A.

La Mura claimed in his initial petition to quash that the IRS had issued the summonses to the Landmark Bank and the Southern Bell Telephone Company for an improper motive, to "coerce [him] and others similarly situated to settle a collateral matter." La Mura made no mention of this in his accompanying affidavit or at the evidentiary hearing; accordingly, the district court should have treated this particular allegation of improper motive as unsupported. *See United States v. Southeast First National Bank of Miami Springs*, 655 F.2d 661, 664 (5th Cir.1981); *see also United States v. Will*, 671 F.2d 963, 968 (6th Cir.1982); *United States v. Goldman*, 637 F.2d 664, 667 (9th Cir.1980). The only possible evidence the court could have considered on the improper motive issue was La Mura's assertion, in his affidavit, that, as a result of the ongoing criminal investigation of himself and other members of the

---

**9.** Prior to 1982, the IRS could not issue a summons solely to gather information for a criminal prosecution against the taxpayer. Thus, in *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), and *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Supreme Court established that an IRS summons could not be enforced once the IRS referred the case to the Department of Justice for criminal prosecution or made an institutional commitment to refer it to the Department for criminal prosecution. The vagueness of the second half of the *LaSalle National Bank* rule spawned protracted litigation and frustrated the summary nature of enforcement proceedings. *See* H.R.Rep. No. 404, S.Rep. No. 494, H.Conf.Rep. No. 760, S.Conf.Rep. No. 530, 97th Cong.2d Sess. 285–87, *reprinted in* 1982 U.S.Code Cong. & Ad.News 1030–32. In 1982, Congress amended the tax

code to provide a clear definition of when a tax investigation has become solely criminal in nature. This new provision, found at 26 U.S.C. § 7602 (1982), states that the IRS may not issue a summons if it has referred the case to the Department of Justice for criminal prosecution.

In the case at hand, Agent Vale indicated in his letter to La Mura that he was investigating La Mura's tax returns for possible criminal violations of the tax code. The IRS had not, however, referred the case to the Department of Justice for possible criminal prosecution. That Agent Vale was investigating La Mura's tax returns solely for possible criminal violations thus did not provide the district court with a basis for finding that the summonses were issued for an improper purpose. *See United States v. Centennial Builders, Inc.*, 747 F.2d 678, 681 (11th Cir.1984).

Universal Life Church, he was "fearful of claiming further charitable contributions [to the church] for the year 1982 and thereafter." Arguably, one might construe this statement as implying that the IRS was conducting its investigation simply to discourage La Mura from making further contributions to the church.

In our view, that La Mura might have been hesitant to claim as charitable deductions further contributions to the Universal Life Church did not yield the inference that the IRS was investigating La Mura for the purpose of discouraging him from claiming such deductions in future tax years. That this might be the effect, rather than the purpose, of the investigation is of no consequence. Were we to hold otherwise, we would deprive the IRS of the ability to make a thorough inquiry into the propriety of a deduction. We hold, therefore, that the district court's finding that the summonses had been issued for an improper purpose is clearly erroneous.[10] We turn now to the court's finding that the information requested from the Landmark Bank and the eight other financial institutions was not relevant to IRS' investigation.

### B.

The standard of relevance applicable to an IRS summons is different from that employed by a court when deciding whether to admit evidence at trial. *See* Fed.R.Evid. 401. The government's burden of showing relevance in this context is slight. If the information sought by an IRS summons " 'might throw light upon the correctness of the taxpayer's return,' " then it is deemed to be relevant. *United States v. Wyatt*, 637 F.2d 293, 300 (5th Cir.1981) (quoting *Foster v. United States*, 265 F.2d 183, 187 (2d Cir.), *cert. denied*, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959)). *See also United States v. Arthur Young & Co.*, 465 U.S. 805, ——, 104 S.Ct. 1495, 1501, 79 L.Ed.2d 826 (1984); *United States v. Turner*, 480 F.2d 272, 279 (7th Cir.1973). Courts have explained this standard as requiring the IRS to demonstrate that it has a " 'realistic expectation rather than an idle hope that something might be discovered.' " *Wyatt*, 637 F.2d at 300-01 (quoting *United States v. Harrington*, 388 F.2d 520, 524 (2d Cir.1968)).

The district court, in its June 3, 1983 order, found that the bank summons was "overbroad and overreaching."[11] As indicated above, the court's primary concern was whether bank records for years not under investigation could be relevant.[12] Not satisfied with the government's argument that the IRS needed information about the La Muras' financial position both before and after the years under investigation to determine the genuineness of the

10. The purpose for which an IRS summons has been issued is one of fact. The district court's finding with respect to such cannot be overturned, therefore, unless it is clearly erroneous. *United States v. Gottlieb*, 712 F.2d 1363, 1367 & n. 9 (11th Cir.1983); *see also United States v. Davis*, 636 F.2d 1028, 1036 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).

11. Although the district court quashed the summons because it was, among other things, "overbroad," a concept which this court in *United States v. Wyatt*, 637 F.2d 293, 302 (5th Cir.1981), distinguished from "irrelevancy," the district court's focus, as well as the parties', has been on whether the materials sought were relevant. We thus treat the court's order as if it were so worded.

12. At the evidentiary hearing, the district court indicated that it would rule on the IRS' request for the summoned materials as it would on a discovery request in any other civil controversy and articulated its standard of relevancy as follows: "Are the records called [for] in these summons reasonably calculated to lead to matters that would be relevant to a criminal tax investigation?" Although this formulation does not incorporate the oft used phrase, "might throw light upon," the discovery relevancy standard the district court employed is the rough equivalent of that we have articulated in the text. *See United States v. Powell*, 379 U.S. 48, 57, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964) (likens administrative subpoena powers to court's powers to order discovery); *AM International, Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D.Ill.1981) (discovery should be allowed if there is any possibility that the information sought may be relevant); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 259 (D.Del. 1979).

taxpayer's charitable deductions, the court quashed the summons in its entirety.

We hold, as an initial matter, that it was clear error [13] for the district court to quash the summons issued to the Landmark Bank and the other financial institutions to obtain the La Muras' records for the years 1980 and 1981.[14] As the government correctly argued to the district court, the IRS was entitled to investigate every aspect of the taxpayer's 1980 and 1981 returns. Bank records for those years were plainly relevant to such an investigation. They were relevant even under the court's narrow view of the scope of the IRS' investigation, i.e., that it was limited to the taxpayer's charitable contributions to the Universal Life Church in 1980 and 1981. The IRS did not have to accept Mr. La Mura's cancelled checks as conclusive evidence of the genuineness of his contributions. It suspected that Mr. La Mura and the Universal Life Church had engaged in a sham contribution scheme: La Mura would make a contribution to the church and take a tax deduction, and the church would subsequently return the funds or give him unfettered access to equivalent funds in its own accounts. It is obvious that the La Muras' bank records would aid the IRS in determining whether such a scheme had been carried out.

The case before us is similar to that presented to the Second Circuit in *United States v. Harrington*, 388 F.2d 520 (2d Cir.1968). There, the IRS issued a section 7602 summons to an attorney, Harrington, requesting him to produce all records of monies received from the taxpayer, a client, and disbursed by him in connection with the taxpayer's divorce. Harrington agreed to divulge all information concerning the receipt of such monies, but refused to divulge any records that would indicate his disposition thereof. The Second Circuit upheld the district court's enforcement of the summons. It noted that the IRS could be certain that the payments to Harrington, portions of which his client could deduct on his tax return, had not been returned to the taxpayer only if it traced the course they took after Harrington received them. Similarly here, unless the IRS has access to the La Muras' financial records, it will have no way of knowing whether the contributions in question were returned, directly or indirectly, to the taxpayer by the Universal Life Church. The summoned financial records for the years 1980 and 1981 were, therefore, clearly relevant to the IRS' inquiry. The only question remaining is whether the records for years not under investigation were relevant to that inquiry.

The government represented to the district court that the IRS had to know the La Muras' financial position prior to 1980 and 1981 in order to determine the effect the 1980 and 1981 contributions to the church, which amounted to nearly thirty percent of Mr. La Mura's income, should have had on the La Muras' life style. The government explained that it was necessary to examine the years prior to 1980 to refute any claim the taxpayer might make that his life style did not change in 1980 and 1981 because the contributions had been made from previously accumulated savings. It was necessary to examine a substantial period thereafter to determine whether the impact of the contributions on the La Muras' life style had been delayed. If, for example, the taxpayer had borrowed to make his

---

13. A district court's determination that information sought is not relevant to the IRS' investigation is a question of fact and cannot be overturned unless clearly erroneous. *United States v. Greenleaf*, 546 F.2d 123, 128 (5th Cir.1977); *accord United States v. Goldman*, 637 F.2d 664, 666 (9th Cir.1980); *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 876 n. 29 (D.C.Cir.), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 and 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977).

14. Indeed, the district court did not appear to be concerned about the IRS' request for the La Muras' Landmark Bank records for the years 1980 and 1981. Accordingly, it should have modified the summons to allow for such disclosure. *See United States v. Bisceglia*, 420 U.S. 141, 151, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975); *United States v. Greenleaf*, 546 F.2d at 125 & n. 4; *United States v. Kis*, 658 F.2d 526, 537 (7th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *United States v. Richards*, 631 F.2d 341, 343 (4th Cir.1980).

contributions, their effect on his life style might not be evident until sometime after 1980 or 1981. We thus conclude that the district court's finding that the summoned financial records for years other than 1980 and 1981 were not relevant to the IRS investigation was clearly erroneous.

The district court's orders quashing the IRS summonses to the Landmark Bank and the other eight financial institutions are, accordingly, reversed.

REVERSED.