[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14825
_____

D.C. Docket No. 1:10-cv-23507-ASG

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA,
a Federally recognized Indian Tribe,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 15, 2012)

Before BARKETT and PRYOR, Circuit Judges, and BATTEN,[*] District Judge.

PRYOR, Circuit Judge:

This appeal presents three issues: (1) whether the Miccosukee Tribe may

assert tribal sovereign immunity to quash summonses issued to third-party

[*]Honorable Timothy C. Batten, Sr., United States District Court for the Northern District of
Georgia, sitting by designation.

financial institutions by the Commissioner of the Internal Revenue Service to obtain tribal financial records relevant to an ongoing tax investigation; (2) whether the Commissioner issued the summonses for a proper purpose; and (3) whether the Tribe has standing to bring an overbreadth challenge to summonses issued to third parties and, if so, whether the summonses were overbroad. In 2010, the Commissioner issued four summonses to third-party financial institutions to determine whether the Tribe had complied with its federal withholding requirements during the period from 2006 to 2009. The Tribe petitioned to quash the summonses on the grounds of sovereign immunity, improper purpose, relevance, bad faith, and overbreadth. The district court denied those petitions. Because we conclude that tribal sovereign immunity does not bar the issuance of these third-party summonses, the district court did not clearly err when it found that the summonses were issued for a proper purpose, and the Tribe lacks standing to challenge the summonses for overbreadth, we affirm.

## I. BACKGROUND

Indian tribes are required by law to deduct and withhold income taxes from gambling revenues paid to Indian tribe members. 26 U.S.C. § 3402(r)(1). Indian tribes are also subject to backup withholding, id. § 3406(a), and reporting requirements, id. § 6041(a). In 2005, the Commissioner of the Internal Revenue Service began to investigate the Miccosukee Tribe to determine whether the Tribe

2

had complied with its reporting and withholding requirements.  The Commissioner determined that, from 2000 to 2005, the Tribe had failed to withhold the required amounts under sections 3402(r)(1) and 3406(a), and had failed to file annual tax returns for that withholding.  After finding that the Tribe had failed to comply with its tax obligations from 2000 to 2005, the Commissioner extended his investigation to the period from 2006 to 2009.

In 2010, the Commissioner issued summonses to American Express, Citibank, Morgan Stanley, and Wachovia Bank to produce documents associated with the bank and brokerage accounts maintained by the Tribe at those institutions.  The summonses issued to American Express, Citibank, and Wachovia Bank requested 11 categories of records from the period from 2006 to 2009.  The summons issued to Morgan Stanley, a brokerage firm, sought only eight categories of records.  The Commissioner sought these records from third parties because the Tribe had not complied with requests for the documents.

The Tribe filed four petitions to quash the summonses.  The Tribe argued that the summonses were unenforceable because the Tribe was protected from such summonses by tribal sovereign immunity, the summonses were issued for an improper purpose, the summonses were overbroad, and the summonses were issued in bad faith.  The financial institutions did not join the Tribe to challenge the summonses, nor did they intervene in the litigation after the Tribe brought suit.

3

The United States opposed the petitions to quash.  The United States submitted the sworn declaration of Revenue Agent James Furnas, who explained that he had conducted the investigation of the period from 2000 to 2005 and had determined that the Tribe had failed to comply with its withholding and reporting requirements during that period.  Furnas attested that the Commissioner believes that the Tribe also failed to comply with its tax obligations from 2006 to 2009.  He also attested that he sought the records to "confirm that the Tribe was making unreported payments and to determine the applicability of the Internal Revenue Code to the payments."  Finally, he attested that the "[t]he summons[es] request[ed] information that is necessary to determine whether the Tribe made unreported payments, the amount of payments, the recipients of the payments, the nature of the payments, and the source of income for the payments (including whether the payment was from gaming revenue or non-gaming revenue)."

The district court held an evidentiary hearing and later denied the petitions to quash.  The district court held that tribal sovereign immunity does not prevent the issuance of the summonses, that the Commissioner had issued the summonses for a legitimate purpose, that the summonses were not overbroad, and that the Commissioner had met the good-faith requirements for tax enforcement under United States v. Powell, 379 U.S. 48, 57–58, 85 S. Ct. 248, 254–55 (1964).

4

## II.  STANDARD OF REVIEW

Two standards of review govern the issues in this appeal.  We review <u>de novo</u> the legal issue whether a Tribe is entitled to sovereign immunity.  <u>Fla. Paraplegic Ass'n v. Miccosukee Tribe of Indians of Fla.</u>, 166 F.3d 1126, 1128 (11th Cir. 1999).  We review for clear error the issue of fact whether a summons was issued for a proper purpose.  <u>La Mura v. United States</u>, 765 F.2d 974, 981 n.10 (11th Cir. 1985).  We review <u>de novo</u> the legal issue whether a party has standing to challenge a summons as overbroad.  <u>Cf.</u> <u>Harrell v. Fla. Bar</u>, 608 F.3d 1241, 1254 (11th Cir. 2010).  And we review for clear error the issue of fact whether a summons is overbroad.  <u>See</u> <u>United States v. Medlin</u>, 986 F.2d 463, 467 (11th Cir. 1993).

## III.  DISCUSSION

We divide our discussion in three parts.  First, we explain why tribal sovereign immunity does not bar the summonses issued to the financial institutions.  Second, we explain why the district court did not clearly err when it found that the Commissioner issued the summonses for a proper purpose.  Third, we explain why the Tribe lacks standing to challenge the summonses as overbroad and we explain, in the alternative, why the district court did not clearly err in rejecting the overbreadth challenge.

5

*A.  The Tribe May Not Assert Sovereign Immunity to Quash These Summonses.*

We recognize that Indian tribes ordinarily enjoy sovereign immunity.  The Supreme Court has affirmed that Indian tribes are entitled to immunity from suit absent a clear waiver or congressional abrogation.  Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509, 111 S. Ct. 905, 909 (1991).  But the Supreme Court has also explained that tribal sovereign immunity "is not congruent with that which the Federal Government, or the States, enjoy" and "is subject to plenary federal control and definition."  Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g, P.C., 476 U.S. 877, 890–91, 106 S. Ct. 2305, 2313 (1986).

The claim to tribal sovereign immunity here fails for two reasons.  First, the summonses are not suits against the Tribe.  Second, tribal sovereign immunity cannot bar a suit by the United States.

The summonses issued by the Commissioner to third-party financial institutions are not suits against the Tribe.  For the purposes of sovereign immunity, a suit is defined broadly:

> The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.

6

<u>Dugan v. Rank</u>, 372 U.S. 609, 620, 83 S. Ct. 999, 1006 (1963) (internal quotation marks and citation omitted).  But even under this broad definition, the summonses are not suits against the Tribe.  The summonses seek no judgment against the Tribe.  Nor do the summonses order the Tribe to appear before a tribunal.

The Tribe argues that the summonses will compel the Tribe to reveal confidential financial information and will force the Tribe to restructure their banking practices to keep tribal funds on the reservation, but these arguments fail. The Tribe voluntarily disclosed its confidential financial information to third-party financial institutions before these summonses were issued.  After disclosure, that information became the property of the third parties.  <u>United States v. Centennial Builders, Inc.</u>, 747 F.2d 678, 683 (11th Cir. 1984).  And if the Tribe chooses to restructure its banking practices, it does so as an exercise of its own discretion, not under court order.

Even if the summonses could be considered suits against the Tribe, tribal sovereign immunity would not bar a suit by the United States.  <u>Fla. Paraplegic Ass'n</u>, 166 F.3d at 1135; <u>Reich v. Mashantucket Sand & Gravel</u>, 95 F.3d 174, 182 (2d Cir. 1996); <u>Quileute Indian Tribe v. Babbitt</u>, 18 F.3d 1456, 1459–60 (9th Cir. 1994); <u>United States v. Red Lake Band of Chippewa Indians</u>, 827 F.2d 380, 382 (8th Cir. 1987).  Although Indian tribes "remain a separate people, with the power of regulating their internal and social relations," they are no longer "possessed of

7

the full attributes of sovereignty." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55, 98 S. Ct. 1670, 1675 (1978) (internal quotation marks omitted). The Supreme Court has described tribal sovereign immunity as having passed to the United States to be held for the benefit of the tribes, much like the tribal lands. United States v. U.S. Fidelity & Guar. Co., 309 U.S. 506, 512, 60 S. Ct. 653, 656 (1940). Indian tribes may not rely on tribal sovereign immunity to bar a suit by a superior sovereign.

### B. The Commissioner Issued the Summonses for a Proper Purpose.

The district court did not clearly err when it found that the Commissioner issued the summonses for a proper purpose. When the Commissioner issues a summons, the Commissioner bears the initial burden to "show that the investigation will be conducted pursuant to a legitimate purpose." Powell, 379 U.S. at 57, 85 S. Ct. at 255. After the Commissioner meets his initial burden, the burden shifts to the taxpayer to disprove the existence of a legitimate purpose. La Mura, 765 F.2d at 979. "The [Commissioner] can satisfy [his] burden [to show a legitimate purpose] merely by presenting the sworn affidavit of the agent who issued the summons attesting to [that purpose]." Id. The Commissioner submitted such an affidavit in this matter; Furnas attested that the summonses were issued as part of an investigation to determine whether the Tribe had complied with its withholding and reporting requirements between 2006 and 2009. Because the

8

Commissioner met his burden, the burden shifted to the Tribe to disprove the legitimate purpose. Id. at 979–80. But the Tribe offered no evidence that the summonses were issued for an improper purpose.

The Tribe argues that it is not subject to income taxes, but the Tribe is subject to withholding and reporting requirements under the Internal Revenue Code. See, e.g., 26 U.S.C. § 3402(r)(1) ("Every person, including an Indian tribe, making a payment to a member of an Indian tribe from the net revenues of any class II or class III gaming activity conducted or licensed by such tribe shall deduct and withhold from such payment a tax . . . ."). As a result, determining the tax liability of the Tribe is a proper purpose for issuing the summons, and "[t]he taxpayer does not meet his burden [to disprove this proper purpose] by contesting the underlying validity of the assessment because the validity of the assessment may not be challenged in a summons enforcement proceeding." United States v. Morse, 532 F.3d 1130, 1132 (11th Cir. 2008).

C. The Tribe Lacks Standing to Challenge the Summonses as Overbroad and, Alternatively, the District Court Did Not Clearly Err in Rejecting That Challenge.

The Tribe also appeals the finding of the district court that the summonses were not overbroad, but the Tribe lacks standing to challenge a third-party summons as overbroad. "[E]very court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates." Fla. Ass'n of Med. Equip. Dealers v. Apfel, 194 F.3d 1227, 1230 (11th Cir. 1999). "Standing

9

for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressibility." Dermer v. Miami-Dade Cnty., 599 F.3d 1217, 1220 (11th Cir. 2010). Because an overbreadth challenge is about the ability of the summonee to comply, not about the scope of the documents requested, the taxpayer lacks Article III standing to bring an overbreadth challenge to a third-party summons.

An overbreadth challenge is distinct from a relevance challenge. See United States v. Wyatt, 637 F.2d 293, 301–02 (5th Cir. 1981). "An IRS summons is overbroad if it does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." Medlin, 986 F.2d at 467 (internal quotation marks omitted). The standard for relevance is minimal: "If the information sought by an IRS summons might throw light upon the correctness of the taxpayer's return, then it is deemed to be relevant. La Mura, 765 F.2d at 981 (internal quotation marks omitted).

Because the taxpayer will suffer some injury when his information is disclosed even if the information is held by a third party, he may challenge a summons issued to a third party on the ground of relevancy, see id., but a taxpayer suffers no injury when a summons is difficult to comprehend, unless the summons is issued to him. King v. United States, 684 F. Supp. 1038, 1041 (D. Neb. 1987). For this reason, a taxpayer lacks standing to challenge a summons issued to a third-

party as overbroad.  Id.  The Commissioner issued the summonses to third-party financial institutions, not the Tribe.  These financial institutions have not challenged the summonses as overbroad, and the Tribe may not stand in their shoes to do so.

And even if the Tribe had standing, the district court did not clearly err when it found that the summonses were not overbroad.  A summons is not overbroad if it "specifie[s] the subject matter of the documents requested, the source of those documents and the limited time period from which the documents [a]re to be drawn."  Medlin, 986 F.2d at 467.  The district court found that the summonses satisfied these factors, and the record supports that finding.  The Commissioner sought 11 specific categories of documents from the four-year time period for which the Tribe is under investigation.

To the extent that the Tribe argued relevancy as opposed to overbreadth, the district court did not clearly err when it found that the requested records were relevant to the tax investigation.  Furnas explained in his deposition why each category of requested records could be relevant to his investigation.  In particular, he explained that the Commissioner sought information about tribal members' accounts and about communications between the Tribe and the financial institutions to track the source of disbursements that should have been subject to withholding under federal law.

11

## IV.  CONCLUSION

We **AFFIRM** the denial of the petitions to quash**.**