[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13843

_____

D.C. Docket No. 1:14-mc-20938-CMA

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHAIRMAN COLLEY BILLIE,
as Chairman, Miccosukee General Council,
Miccosukee Tribe of Indians of Florida,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 1, 2015)

Before HULL, BLACK and MELLOY,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Michael J. Melloy, United States Circuit Judge for the Eighth Circuit, sitting by designation.

The United States filed a petition to enforce an IRS administrative summons against Colley Billie as Chairman of the General Council of the Miccosukee Tribe of Indians of Florida. The district court entered an order enforcing the summons, and Chairman Billie appeals, arguing enforcement infringes upon the sovereign status of the Tribe, requires him to release documents tribal law prohibits him from releasing, and requires him to release documents he does not possess. He also argues, for the first time in his reply brief to our Court, that a recently passed federal law mandates suspension of the present IRS examination. We conclude enforcement of the summons does not implicate tribal sovereign immunity concerns and Chairman Billie has not demonstrated a lack of possession. We also conclude the issue regarding suspension of the examination is not properly before our Court. We therefore affirm the district court's enforcement order.

I.

The Miccosukee Tribe operates a federally regulated casino. As part of an earlier phase of the present examination to determine whether the Tribe complied with reporting and withholding requirements on the distribution of casino revenue, the IRS issued summonses to third-party financial institutions. The Tribe petitioned the district court to quash those summonses, but the district court denied the petition, and our Court affirmed. See Miccosukee Tribe of Indians of Fla. v.

2

United States, 698 F.3d 1326 (11th Cir. 2012).  In our opinion, we rejected the Tribe's assertion of tribal sovereign immunity as inapplicable in the context of an administrative summons issued by the IRS.  Id. at 1330–31 ("The Supreme Court has described tribal sovereign immunity as having passed to the United States to be held for the benefit of the tribes, much like the tribal lands.  Indian tribes may not rely on tribal sovereign immunity to bar a suit by a superior sovereign." (internal citation omitted)).

Information gained from the third-party financial institutions caused revenue agents to believe the Tribe had distributed, without reporting or withholding, more than $300 million in casino revenue over a period of five years.  Agents believed the Tribe distributed this amount to its approximately 600 members and to service providers.  According to an affidavit from a revenue agent, the IRS did not know the nature of the payments and therefore could not conclude whether reporting and withholding requirements applied.

In May 2012, after repeated attempts to gain information from the Tribe, the IRS issued an administrative summons directed towards Chairman Billie (whom the Tribe also refers to as its Custodian of Records).  The summons sought the production of documents and the appearance of Chairman Billie for questioning.  Chairman Billie and attorneys for the Tribe refused to comply with the summons,

3

and the Tribe eventually filed a petition to quash the summons.  The district court dismissed the petition for lack of jurisdiction, finding no legal authority to entertain a petition to quash filed by the actual target of the administrative summons.

The IRS then notified Chairman Billie that certain materials listed in the summons were not required because he had already provided them in response to a summons in a different proceeding.  Chairman Billie continued refusing to comply.

In March 2014, the United States initiated this action in the district court by filing a petition to enforce the summons.  In June 2014, after the commencement of this action, the Tribe's General Council (its ultimate governing body) passed a resolution denying authority for the release of records.  The resolution ostensibly was passed in response to a request by the Business Council (the Tribal body responsible for day-to-day administration of Tribal matters) to authorize a release of records.  In July 2014, Chairman Billie filed a response to the enforcement petition asserting that the district court lacked jurisdiction to enforce the summons because it implicated "matters of tribal self-governance and require[d] interpretation of the tribal law."  His response also asserted he did not possess and could not release the records at issue without approval of the General Council, which had expressly denied such authority through its resolution.

4

The district court granted the petition to enforce the summons.  Chairman Billie sought a stay, which the district court denied.  Chairman Billie, as the representative of the Tribe, appeals the order enforcing the summons.  We note that, notwithstanding the district court's denial of a stay, Chairman Billie and the Tribe had not complied with the summons as of the date of oral argument before this Court.

## II.

Chairman Billie and the Tribe do not argue the United States failed to satisfy the minimal requirements for a prima facie showing of enforceability of the administrative summons.  See United States v. Powell, 379 U.S. 48, 57–58 (1964) ("[1] the investigation will be conducted pursuant to a legitimate purpose, [2] the inquiry may be relevant to the purpose, [3] the information sought is not already within the Commissioner's possession, and [4] the administrative steps required by the Code have been followed—in particular, . . . the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect").  Further, they do not deny Chairman Billie already produced some materials listed in the summons and other materials similar to what is requested in the summons.  Finally, they neither deny

5

Chairman Billie is the Tribe's Custodian of Records nor suggest any other person might have control of the records.

Nevertheless, Chairman Billie and the Tribe argue Chairman Billie lacks possession and control of the materials requested and, as such, cannot comply. We conclude this argument, as presented to our court, is not truly separate from the more general argument asserting tribal sovereign immunity. As an initial matter, this argument does not apply to the summons's request for Chairman Billie to appear for questioning. To the extent such an argument could apply to the production of requested materials, an actual lack of possession or control, when proven, generally excuses compliance with a summons. See United States v. Rylander, 460 U.S. 752, 757 (1983). Chairman Billie and the Tribe, however, bear the burden of proving a lack of possession and control, and they offered no evidence in this regard aside from the June 2014 resolution. See United States v. Huckaby, 776 F.2d 564, 567 (5th Cir. 1985) ("[T]he party resisting enforcement bears the burden of producing credible evidence that he does not possess or control the documents sought."). Even if they had offered other evidence, the burden would be heavy in the present circumstances—Chairman Billie's prior production of materials and his title as Custodian of Records strongly suggest he maintains control and possession. In short, the argument addressing Chairman Billie's possession or control of documents rests entirely on the June 2014 resolution and

6

the assertion that the Tribe's laws prevent him from marshaling and disclosing the materials.

The issue we must address, then, is whether tribal sovereign immunity precludes enforcement of the administrative summons. The General Council's "blocking" resolution, passed after the IRS issued the summons and initiated this action, is of no additional consequence. Whether tethered specifically to the blocking resolution or asserted more generally as a type of immunity inherent in tribal sovereignty, the question on appeal asks simply whose laws are superior and therefore controlling: those of the United States or those of the Tribe. See, e.g., Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522, 544 n.29 (1987) ("The French 'blocking statute,' . . . does not alter our conclusion. It is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute.").

"We review *de novo* the legal issue whether a Tribe is entitled to sovereign immunity." Miccosukee Tribe, 698 F.3d at 1330. Because the federal tax laws at issue expressly apply to Indian tribes, because Congress retains plenary authority over the Tribe, and because the United States is the superior sovereign, the district court correctly ordered enforcement of the administrative summons.

In the appeal involving the summonses directed towards the third-party financial institutions, we held the IRS had issued the summons for a proper purpose because the Miccosukee Tribe was:

> subject to withholding and reporting requirements under the Internal Revenue Code.  See, e.g., 26 U.S.C. § 3402(r)(1) ("Every person, including an Indian tribe, making a payment to a member of an Indian tribe from the net revenues of any class II or class III gaming activity conducted or licensed by such tribe shall deduct and withhold from such payment a tax . . . .").

Miccosukee Tribe, 698 F.3d at 1331.  We also held the Miccosukee Tribe could not assert tribal sovereign immunity to prevent enforcement of an IRS summons against third-party financial institutions.  Id.  We did not limit our holding in a manner to make it only applicable to summonses issued to third-parties.  Rather, we noted simply that the United States is the superior sovereign and that "Indian tribes may not rely on tribal sovereign immunity to bar a suit by a superior sovereign."  Id.  Because our rejection of tribal sovereign immunity as a defense to an IRS summons rested on the relative authority of the sovereigns and not on the identity of the target of the summons, it follows from our prior holding that tribal

8

sovereign immunity cannot defeat enforcement of the present summons towards Chairman Billie.

Finally, Chairman Billie and the Tribe assert in their reply brief that the Tribal General Welfare Exclusion Act of 2014, Pub. L. No. 113-168, 128 Stat. 1883 (Sept. 26, 2014) (the "Act"), mandates suspension of the present examination.  In general, the Act codifies an existing IRS practice of treating tribal general welfare payments to tribal members as non-taxable income.  § 2, 128 Stat. at 1883 (creating 26 U.S.C. § 139E which states at subsection (a), "Gross income does not include the value of any Indian general welfare benefit.").  The Act defines the term "Indian general welfare benefit" using several limitations, including: (1) such welfare benefits must be distributed according to "specified guidelines"; (2) they may not be "lavish or extravagant"; and (3) they may not be "compensation for services."  Id.  And the Act is made applicable to taxable periods for which the period of limitations has not expired, which would encompass the periods at issue in the present examination.  Id. at 1884.

Relevant to Chairman Billie's argument, the Act also provides:

(a) TEMPORARY SUSPENSION OF EXAMINATIONS.—The Secretary of the Treasury shall suspend all audits and examinations of Indian tribal governments and members of Indian tribes (or any

9

spouse or dependent of such a member), to the extent such an audit or

examination relates to the exclusion of a payment or benefit from an

Indian tribal government under the general welfare exclusion, until the

education and training prescribed by section 3(b)(2) of this Act is

completed. . . .

§ 4, 128 Stat. at 1885.  The Act's suspension of examinations is not all-inclusive; it

is limited.  Id. ("to the extent such an . . . examination relates to the exclusion of a

payment . . . under the general welfare exclusion").  Further, much of the Act at

least arguably conflicts with separate U.S. Code provisions that mandate reporting,

withholding, and taxation of distributions of tribal gaming revenue.  See, e.g., 26

U.S.C. §§ 3402(r); 25 U.S.C. § 2710(b)(3).  And, because the present examination

involves up to $300 million distributed to 600 tribal members or to service

providers, there is a high likelihood the present payments would not qualify as

"general welfare payments."

In any event, we generally do not entertain issues first raised in a reply brief.

United States v. Britt, 437 F.3d 1103, 1104 (11th Cir. 2006) (per curiam)

(describing this general practice as a "prudential rule").  The absence of evidence

necessary to support an analysis of how this new law applies to the present case

demonstrates the prudence of this general practice.  As such, we hold the issue is not properly before our Court.

We affirm the judgment of the district court.