[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10341

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MOORE, INGRAM, JOHNSON & STEELE, LLP,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-02413-LMM

_____

Before WILSON, LAGOA, and ED CARNES, Circuit Judges.

PER CURIAM:

As part of an investigation about whether the law firm Moore, Ingram, Johnson & Steele, LLP is subject to tax penalties, the IRS issued an administrative summons to the firm. It sought documents related to the firm's practice of promoting and managing captive insurance arrangements. The Moore firm did not fully comply with the summons, and the IRS filed a petition to enforce it.[1] The district court determined that the summons was enforceable and ordered Moore to disclose the requested documents. It required an item-by-item privilege log for the documents that Moore claimed were protected by attorney-client privilege, rejecting Moore's argument that a categorical assertion of privilege was sufficient. This is Moore's appeal.

## I.

Because the parties and the district court are familiar with them, and this is an unpublished opinion, we will not recount the facts and procedural history in great detail. Moore manages captive insurance companies, which are insurance companies affiliated with their policyholders. I.R.S. Notice 2016-66, 2016-47 I.R.B. 745; see 3 Steven Plitt et al., *Couch on Insurance* § 39:2 (3d ed. 2021) ("A captive insurer is a corporation organized for the purpose of

---

[1] Technically speaking, the Tax Division of the Department of Justice filed the petition to enforce the summons, but we will refer to the petitioner as the IRS because it is the real party in interest.

insuring the liabilities of its shareholders or their affiliates.") (quotation marks omitted). The IRS is investigating whether Moore is liable under I.R.C. §§ 6694, 6695, 6700, and 6701 for promoting, organizing, or selling an abusive captive insurance plan or arrangement.

It is also investigating some of Moore's clients. In summons enforcement actions in the Eastern and Western Districts of Kentucky, district courts found that some of the emails between Moore and its clients were privileged. *See United States v. Micro Cap KY Ins. Co.*, 246 F. Supp. 3d 1194, 1196–98 (E.D. Ky. 2017); *United States v. Owensboro Dermatology Assocs., P.S.C.*, No. 4:16-MC-00003-JHM, 2017 WL 3841684, at *2–3 (W.D. Ky. Sept. 1, 2017).

In this case, the IRS summons directed Moore to produce books, records, and other information related to its management of captive insurance companies for a specific period of time: "from January 1, 2009 through the date of full compliance" with the summons. It also requested a privilege log listing "each allegedly privileged document." Moore produced some documents but refused to produce the rest, and that led to the petition to enforce the summons.

A magistrate judge held a hearing and issued a report recommending that the district court order Moore to produce all of the requested documents that it had not yet produced. The report also recommended that the court reject Moore's request to assert attorney-client privilege in a categorical privilege log instead of in an item-by-item fashion. The district court adopted those

4                    Opinion of the Court                    21-10341

recommendations and ordered Moore to produce those docu-
ments and submit an itemized privilege log.[2]

## II.

Moore first challenges the district court's decision to enforce
the summons. The IRS has the authority to investigate and to issue
summons under 26 U.S.C. § 7602, and that power, while not un-
limited, is "broad" and "expansive." *La Mura v. United States*, 765
F.2d 974, 979 (11th Cir. 1985) (quotation marks omitted). In this
case, it is undisputed that the IRS established a prima facie case for
enforcement. *See United States v. Powell*, 379 U.S. 48, 57–58 (1964)
(describing the requirements of a prima facie case for enforce-
ment). That means the IRS has made an initial showing that (1) the
purpose of the summons was to obtain records relevant to deter-
mining whether Moore owed tax penalties; (2) the records were
relevant to that determination; (3) the IRS did not already possess
the requested records; and (4) it complied with the administrative
steps necessary to issue the summons. *See La Mura*, 765 F.2d at
979. As a result, Moore had to disprove one of those four elements
or show "that enforcement of the summons would constitute an
abuse of the court's process." *Id.* at 979–80. The district court
found that Moore had failed to meet that burden.

---

[2] The magistrate judge also recommended appointing a special master to
oversee document production, but the district court did not adopt that recom-
mendation.

## A.

"We will not reverse an order enforcing an IRS summons unless it is clearly erroneous." *Presley v. United States*, 895 F.3d 1284, 1288 (11th Cir. 2018) (quotation marks omitted). Moore contends that the summons is unenforceable because the IRS already has the information that it seeks. But so long as the "summons as a whole is not harassing, [and] the bulk of the materials summoned is not demonstrably in the possession of the IRS," the summons is enforceable. *United States v. Davis*, 636 F.2d 1028, 1038 (5th Cir. Unit A Feb. 1981).[3]

Moore argues that third parties have already provided the IRS with documents relating to some of Moore's captive insurance clients. Moore concedes that those documents relate to less than half of its clients but argues that the IRS can infer from those documents the information it seeks about the rest of Moore's clients. The district court did not clearly err in rejecting that argument and determining that Moore had failed to show that "the bulk of the materials" were already in the possession of the IRS.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.

B.

Moore next argues that enforcing the summons was an abuse of the court's process, both because the summons is over-broad and because it seeks irrelevant documents.

Moore asserts that the summons is overbroad because it requests too many documents. "An IRS summons is overbroad if it does not advise the summoned party what is required of [it] with sufficient specificity to permit [it] to respond adequately to the summons." *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) (quotation marks omitted); *see also Miccosukee Tribe of Indians of Fla. v. United States*, 698 F.3d 1326, 1332 (11th Cir. 2012) ("A summons is not overbroad if it specifies the subject matter of the documents requested, the source of those documents and the limited time period from which the documents are to be drawn.") (alterations adopted and quotation marks omitted).

The district court found that the summons is limited to a specified time period, requests only documents within Moore's control, and "defines several important terms that cabin the scope of [the] document requests." We agree. The summons is not over-broad.

Moore also asserts that the summons seeks irrelevant documents because of its broad scope. "The standard for relevance is minimal: If the information sought by an IRS summons might throw light upon the correctness of the taxpayer's return, then it is

deemed to be relevant." *Miccosukee Tribe*, 698 F.3d at 1332 (quotation marks omitted).

The summons requests only "information relating to [Moore]'s promotion, organization, and administration of captive insurance companies." Those documents are relevant because they "might throw light upon" whether Moore promoted an abusive tax shelter. *Id.* The court did not err by finding that the summons seeks relevant documents.

### III.

Moore also contends that the district court clearly erred by not allowing it to use a "categorical" log in support of its general assertion that the requested documents were protected by attorney-client privilege.

"[T]he person invoking the attorney-client privilege has the burden of establishing (1) the existence of an attorney-client relationship and (2) the confidential nature of the information sought." *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987). "The privilege only protects communications between an attorney and his client made for the purpose of securing legal advice." *Id.* It doesn't protect business advice. *See id.* And "[t]he purpose of requiring a privilege log is to enable the parties to assess a claim of privilege." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1328 n.3 (11th Cir. 2020) (alteration adopted and quotations marks omitted). That assessment cannot be made if a party makes a generic assertion of privilege, effectively saying to its opponent and

the court: trust us, these documents are all privileged. *See In re Grand Jury Subpoena*, 831 F.2d at 227–28.

Moore challenges the ruling adopting an itemized, document-by-document approach to assessing privilege, arguing that two federal district courts in Kentucky have already determined in litigation between three of Moore's clients and the IRS that "categorically identical" documents are privileged. Based on those rulings, it asserts that the IRS is collaterally estopped from relitigating the privileged status of those documents.

Moore failed to raise its collateral estoppel argument before the magistrate judge, and the district court was not required to consider it. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). But the court addressed the argument anyway and rejected it, finding that Moore's "claim of privilege is considerably broader" than those of the respondents in the Kentucky cases.

We agree. Even assuming Moore preserved the argument, for collateral estoppel to apply "the party relying on the doctrine must show" that the "issue at stake is identical to the one involved in the prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998). The issue in the Kentucky cases is not identical to the issue here.

21-10341                Opinion of the Court                9

In the Kentucky cases, the IRS sought information about only 3 of the 202 captive insurers Moore manages, or 1.5%. *See Micro Cap KY Ins. Co.*, 246 F. Supp. 3d at 1195–96; *Owensboro Dermatology Assocs.*, 2017 WL 3841684, at *1–2. Those three clients asserted that some of the emails that the IRS requested were protected by the attorney-client privilege. After reviewing the emails, the Kentucky district courts determined that they were. *See Micro Cap KY Ins. Co.*, 246 F. Supp. 3d at 1196–98; *Owensboro Dermatology Assocs.*, 2017 WL 3841684, at *2–3. Moore has not established that the documents it is withholding here, which "relat[e] to 95.5% of its 202 captive insurance clients," are identical to the ones that the Kentucky district courts found were privileged. Nor has it established that, as it asserts in its brief, they are "categorically identical." Instead, Moore relies on an attorney's affidavit vaguely asserting that some of the documents are "categorically similar" to the emails at issue in the Kentucky cases. "Categorically similar" is not "categorically identical," and some is not all or most.

In this case, the issue is whether Moore must assert any claim of attorney-client privilege it may have on a document-by-document basis. The district court concluded that it must. The privilege issue at stake in the Kentucky cases was not identical to the issue in this case. The district courts there reviewed the privilege claim on a document-by-document basis; the district court here has not yet done so. It properly rejected Moore's collateral estoppel argument.

Moore's attempt to assert a blanket attorney-client privilege fails. "It is generally agreed that the recipient of a summons properly should appear before the issuing agent and claim privileges on a question-by-question and document-by-document basis." *Davis*, 636 F.2d at 1038; *see also In re Grand Jury Subpoena*, 831 F.2d at 227 ("[A]n attorney seeking to quash a subpoena must assert the attorney-client privilege on a document-by-document basis."). The district court correctly concluded that a categorical privilege log would be inappropriate in this case.

**AFFIRMED.**